[Filed November 11, 1889.]

## J. LOEWENBERG, ET AL., RESPONDENTS, *v.* D. V. ROSENTHAL, ET AL., APPELLANTS.

The special findings of a jury are inconsistent with their general verdict when the former, as a matter of law, will authorize a different judgment than that which the latter will.

The transaction out of which a counter-claim may arise as provided in subdivision 1, section 73, of the Civil Code, must be some business affair between parties whereby mutual and reciprocal obligations are created.

A counter-claim cannot arise out of a mere trespass committed by a defendant in wrongfully taking and carrying away the property of the plaintiff. And where, in an action by certain plaintiffs against certain defendants, for an alleged wrongful taking, carrying away and conversion of certain wood and timber, standing and being upon the land of the former, for which they alleged damages in a certain amount, and claimed to recover treble the amount, under the statute, the defendants set up, by way of counter-claim, an alleged agreement, whereby the plaintiffs promised the defendants that the latter should have all the wood and timber, to be cut and used by them, for the consideration that they would remove it off the land, and would deliver, for the use of plaintiffs, such an amount of cord-wood as should be required for use at a private residence in the city of P. during the time defendants were cutting and removing the said wood and timber; that in pursuance of the said agreement the defendants proceeded to cut and remove the said wood and timber; that they cut and delivered one hundred cords thereof for plaintiffs at said private residence, and were engaged in the performance of their said contract when the plaintiffs interfered and stopped them from completing it and getting the benefit thereof, to their damage of one thousand dollars, which they claimed, together with the value of the hundred cords of wood delivered, as against the plaintiffs' said claim;

*Held,* that the matter so pleaded, if true, would establish a license and justification for the defendants taking and carrying away the wood and timber complained of, but whether the matter constituted a counter-claim or not, query.

*Held, further,* however, that the jury having specially found the fact that the taking and carrying away of the wood and timber by the defendants were unlawful, it disproved the matter alleged as a counter-claim, and that if pleadable as such, it would not avail the defendants, as they had no counter-claim to plead. But the jury having found that the hundred cords of wood was delivered to plaintiffs, and that it was a part of the wood and timber taken and carried away, as the court must conclude, they did find from the special findings and verdict returned, it should have been allowed in mitigation of the damages for the amount of wood and timber found by the jury to have been taken and carried away unlawfully.

*Held, further,* that the finding by the jury that the defendants took and carried away the wood and timber unlawfully, entitled the plaintiffs, under section 338, Civil Code, to treble damages, notwithstanding the jury also found that the defendants had reasonable cause to believe, and did believe, that they had authority from the plaintiffs to so take and carry it away.

That section 339, Civil Code, provides the only circumstances which may prevent a recovery of treble damages under section 338 thereof, in a case where the provisions of the latter section would otherwise be applicable.

APPEAL from the circuit court for Multnomah county.

The respondents filed a complaint in the said circuit court, in which they alleged that the appellants and L.

Rosenthal, between the first day of January, 1885, and the first day of October, 1888, wrongfully took and carried away from the respondents' land, situated in said county of Multnomah, certain fir timber, to the extent of 3,976 cords of wood and 1,520 railroad ties, of the aggregate value of $2,064, which taking and carrying away of said timber by appellants were without lawful authority; and that respondents had been damaged thereby in said sum of $2,064, and that they were entitled to treble the amount of said damages against the appellants, as provided by statute. The respondents filed an answer to the complaint, denying the material allegations contained therein; also set forth, as a further answer thereto, the following: "For a further and separate answer to said complaint, and as a counter-claim thereto, the defendants [appellants], answering herein, say: That on or about the —— day of ———, A. D. 188—, the plaintiffs [respondents] and the defendants [appellants], answering herein, entered into an agreement whereby plaintiffs [respondents] promised and agreed with said defendants [appellants] last-named, that such defendants [appellants] should have all the down-timber upon said lands, which embraced and comprised nearly all the timber thereon; also the standing timber thereon; same to be cut up and used for defendants' [appellants'] purposes, so answering herein; in consideration whereof said defendants [appellants] last-named agreed with plaintiffs [respondents] that they would remove said timber off of and from said lands, and would cut up, supply and deliver to and for plaintiffs' [respondents'] use such amount of cord-wood as should be required for use at a private residence in the city of Portland, during the time defendants [appellants] last-named were cutting and removing said wood from said lands; and defendants [appellants] last-named proceeded to cut and remove the wood from said lands in pursuance of said agreement, and did cut up and deliver of same for the plaintiffs [respondents], at said private residence, one hundred cords of wood, worth $3.50 per cord, and were proceeding to cut and remove the tim-

ber off of and from said lands in pursuance of said agreement, when plaintiffs [respondents] interfered and stopped and prevented last-named defendants [appellants] from completing their contract, and getting the remainder of said wood, and getting the benefit thereof; and such last-named defendants [appellants] say that they suffered loss and were damaged by reason thereof in the sum of $1,000; and further say that the wood so delivered at said residence, in the city of Portland, was of greater value than any timber got off and from said lands by $200; and the last-named defendants [appellants] claim from plaintiffs [respondents] the said sum of $1,200, and pray that plaintiffs [respondents] may be ordered to pay the costs and disbursements incurred herein." The respondents filed a reply, denying the same.

The case was tried by a jury, who returned the following general and special verdict: To the question propounded to the jury by the court, "(1) Did the defendants take and carry off any timber or trees standing or being upon the lands alleged in the complaint?" the former returned the following answer: "We, the jury, answer, 'Yes.'" To the second question, "How many cords of wood did defendants take or carry off from said lands within the time alleged in the complaint, cut from trees or timber on said lands?" the jury gave the following answer: "3,800 cords." To the third question, "Have they [the defendants] lawful authority for taking such wood, timber, or trees?" answered, "No." To the fourth question, "What was the value of timber taken from said land by defendants?" answered, "$380." To the fifth question, "Had the defendants probable cause to believe, and did they believe, when they carried off wood from the land in question in this case, that the owners of the land had authorized them to take and carry away said wood?" answered, "Yes." Signed, "C. W. GAY, Foreman." Underneath the signature of the foreman was the following memorandum, made by the jury:

3,800 cords of wood, @ 10c.........................$380
100 cords, delivered to Mr. Fleishner, @ $3.50........ 350

Ballance due plaintiff............................$ 30

This special finding was followed by a general verdict, the substance of which is as follows: "We, the jury in the above-entitled cause, find for the plaintiffs in the sum of thirty dollars ($30.)" Signed by all the jurors. Thereupon the respondent's counsel filed a motion for judgment on the special findings of the jury, notwithstanding the general verdict of the jury, as follows: "That plaintiffs have judgment against defendants for treble the damages assessed by the jury, as shown by the said special findings." Said motion was afterwards heard by the court, who made the following order and adjudication thereon: "And it now appearing to the court by such special findings that the defendants entered upon the lands of the plaintiffs described in the complaint without lawful authority, and cut and removed therefrom timber cut into cord-wood, to-wit, 3,800 cords, and that the said wood was worth $380, it is now, therefore, ordered and adjudged that said plaintiffs have and recover of and from said defendants treble the said damages to said plaintiffs, to-wit, $1,140, and their costs and disbursements;" which is the said judgment appealed from.

*C. J. McDougall*, for Appellants.

*J. H. Woodward*, for Respondents.

THAYER, C. J.—If the special findings in this case are inconsistent with the general verdict, they must, of course, control it. Whether they were so inconsistent or not depends, I suppose, upon the question as to whether they would authorize a different judgment in the action than the general verdict would. The latter only authorized a judgment for $30. The special findings established the fact that the appellants took and carried away timber, or trees, standing or being upon the respondents' land, to the amount of 3,800 cords of wood, of the value of $380, with-

out any lawful authority for taking it, although they had probable cause to believe, and did believe, at the time they carried it away, that the owners of the land had authorized them to do so. These facts, as a matter of law, clearly created a liability on the part of the appellants for the value of the wood. The appellants believing, and having probable cause to believe, that the owners of the land had authorized them to take the wood, did not lessen their liability. If one person takes and carries away the property of another without lawful authority to do so, he becomes liable for its value, whatever his belief may have been as to his right to take it. To authorize one man to take the property of another, he must have had the latter's consent to take it. His belief in his right to take it, though he have reasonable grounds therefor, will not be a sufficient justification for the act.

But the appellants' counsel claims that the jury made a special finding to the effect that the appellants delivered one hundred cords of the wood to the respondents; that it was of the value of $350, and constituted a counter-claim in the action. It may be inferred from the memorandum appearing at the foot of the special verdict, that the jury believed that the one hundred cords of wood was so delivered; they evidently intended to allow the appellants $350 therefor against the respondents' claim. Their finding, however, that the appellants unlawfully took and carried away the wood precluded any such allowance. No claim of that character could be admitted as against a trespass. If the appellants delivered one hundred cords of the wood in question to the respondents, and the latter received it, knowing that it was a part of said wood, agreeing expressly or impliedly to receive it on account of the wood appellants had cut and carried away, it would have been a waiver of the latter's tort, and consequently the jury could not consistently have found that the taking and carrying it away was unlawful. But the jury did not undertake to find that the said one hundred cords was a part of the said 3,800 cords of wood, or that the respond-

ents received it under any such circumstances as suggested, although they attempted to allow its value in making up their verdict. This, however, they could not properly do after having made the finding referred to.

The appellants' counsel contends that, under the findings of the jury, the $350 for the one hundred cords of wood delivered to Mr. Fleischner was the proper subject of a counter-claim. But this is at least doubtful. A counter-claim is a cause of action existing in favor of a defendant and against a plaintiff, between whom a several judgment might be had in the action, and must be a cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim. § 73, Civil Code. The foundation of the respondents' claim in this case was an unlawful taking and carrying from their land their wood and timber, and the appellants were either guilty or not guilty of the act. If they did it with the consent of the respondents, or under the authority of law, they were not guilty; otherwise they were.

The action was heretofore known as "trespass *de bonis asportatis*," and was brought by an owner of goods to recover damages for taking and carrying them away, and it is no defense to the action that the defendant afterwards returned the goods. How a cause of action, or any reciprocal obligation, could arise out of such a transaction in favor of a defendant who committed the act would puzzle the skill and ingenuity of a logician to determine. If a defendant who had taken and carried away the property of a plaintiff under such circumstances were to return it, or some part thereof, and the plaintiff accepted it, the defendant might plead the fact in mitigation of damages; but to contend that he would have a counter-claim against the plaintiff's claim for damages for the taking would be absurd, and it would be equally absurd to hold, where the defendant had sold some of the property so taken to the plaintiff, and claimed that the latter was indebted to him therefor, that that constituted a counter-claim. I am unable to understand how a counter-claim can arise out of

a transaction which constitutes the foundation of a claim for damages for a trespass, under the section of the Code above referred to. It certainly is not provided for in the second subdivision of said section, as that applies wholly to actions arising on contract. The first subdivision includes the term "transaction," which, of course, is broader than that of contract, and, as used in said subdivision last referred to, it would seem to be something akin to it. The clause, "a cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim," would imply that it arose out of some agreement or business affair between the parties. To illustrate: If A. were to sell to B. personal property, and falsely represent its condition or quality. in an action by A. for the price B. could set up the fraud as a counterclaim. There it is easy to see how B.'s claim arises out of the same transaction counted on by A. But to hold, where B. has tortiously carried away A.'s property, and the latter has at the same time committed a wrong against B., or obligated himself in some way to pay B. a sum of money, that that arises out of the same transaction, constituting the foundation of A.'s claim for the trespass, would be extending the office of a counter-claim beyond the bounds of legislative enactment.

It seems to me, in any event, that the appellants' further answer amounts to nothing more than a plea of license to take and carry away the wood and timber in question. It sets up an agreement whereby the respondents promised the appellants that they should have all the down and standing timber upon their certain tract of land, to be cut up and used by them, for the consideration that they would remove said wood and timber off the land, and would deliver to the respondents, and for their use, such amount of cord-wood as should be required for use at a private residence in the city of Portland, during the time appellants were cutting and removing said wood and timber from the land upon which they were situated; that in pursuance of the said agreement, the appellants proceeded to cut and

remove the wood from said land, and cut and delivered of the same for respondents, at said private residence, one hundred cords, worth $3.50 per cord, and were proceeding to cut and remove the timber off said land in pursuance of the agreement, when respondents interfered, and stopped them from completing the contract, and getting the remainder of the wood, and the benefit thereof. These allegations, if true, would have constituted a good defense to the action, as they would have established a license or authority to take and carry away the wood. I doubt, however, whether they amounted to a counter-claim. But, in view of the special findings of the jury, none of the allegations are true which are inconsistent therewith.

The most favorable aspect which the case presents in its present attitude is that the appellants wrongfully and unlawfully went upon the respondents' land, and cut and carried away therefrom their wood and timber. One hundred cords of the wood, however, they delivered at a residence in Portland for the respondents. That said wood was worth $3.50 a cord, delivered. This gave them no right of action against the respondents for the value of the wood, as it already belonged to the respondents. The appellants made it more valuable by their labor in cutting and hauling it, but that was bestowed in their own wrong, and did not change the title to the property. They certainly gained no right of action against the respondents by selling to them wood which the latter already owned. Hence, if a counter-claim had been properly pleadable, it would not avail the appellants anything, as they had none in fact to plead. But if the appellants hauled and delivered to the respondents one hundred cords of the 3,800 cords of wood, which I think we must infer from the special findings and general verdict of the jury they did, that fact ought to go in mitigation of damages; that is, the appellants should not be required to pay for the wood which they returned to the respondents. In that case the respondents were only entitled to recover for 3,700 cords, instead of 3,800 cords, of wood, which, at 10 cents a cord, amounts

to $370. It may be true, as claimed by respondents in their evidence in the case, that the hundred cords of wood was delivered in consideration of the wood and timber the appellants were to have off from the eighty-acre tract of land belonging to Mrs. Fanny Fleischner, a sister-in-law of the respondent L. Fleischner; but we are not authorized to so find from the record. If this view is correct, the respondents were entitled to recover $370 damages, the value of the wood taken and carried away by the appellants.

The next question which arises in the case is, whether the respondents were entitled to have this latter sum trebled. Section 338, Civil Code, provides that whenever any person shall cut down, girdle, or otherwise injure or carry off any tree, timber or shrub on the land of another person, etc., without lawful authority, in an action by such person, etc., against the person committing such trespasses, or any of them, if judgment be given for the plaintiff, it shall be given for treble the amount of damages claimed, or assessed therefor, as the case may be. Section 339, said Code, provides that if, upon the trial of such action, it shall appear that such trespass was casual or involuntary, or that the defendant had probable cause to believe that the land on which such trespass was committed was his own, or that of the person in whose service or by whose direction the act was done, or that such tree or timber was taken from unenclosed land, for the purpose of repairing any public highway or bridge upon the land, or adjoining, judgment shall be given for single damages. The appellants' counsel insists that this statute is penal in its character, and does not apply to an unintentional trespass; and cites a number of authorities to show that in order to subject a party to such penalty the defendant must have committed the wrong knowingly, wilfully or under such circumstances as to show him guilty of criminal negligence. If said section 338 of the Code stood alone, the court would be called upon to construe it, and it might, in that case, adopt the construction contended for by the

counsel, but we are spared that labor, as said section 339, as will be seen, points out the circumstances under which no more than single damages can be recovered. The legislature, by the latter section, has given a construction to the former one—has prescribed the cases in which such trespasser shall be liable for single damages only, and leaves him in all other cases liable to treble damages as prescribed in the former section; and if the courts were to attempt to make other exceptions in favor of the trespasser than those specified in said latter section, it would be an encroachment upon legislative functions. Hence the finding of the jury that the appellants had probable cause to believe, and did believe, when they carried off the wood from the land in question, that the owners of the land had authorized them to take and carry it away, was wholly immaterial and irrelevant. Their having taken and carried away the wood without lawful authority, and converted it to their own use, was not a casual or involuntary trespass, but a deliberate act upon their part, and any belief they might entertain regarding their right to do so could not avail them as a defense against a recovery of punitive damages, unless they had probable cause to believe that they were taking it from their own land, or that of the person in whose service or by whose direction the act was done, or unless they took the wood under the other circumstances, and for the purposes mentioned in said section 339. The statute declares the circumstances under which the punitive liability attaches, and those which will exempt a party from it, and the courts have no discretion but to administer its provisions.

The finding of the jury, under the third special finding, brings the case within said section 338, and none of the other findings take it out of the provisions of that section. The statute was enacted for a good and wise purpose; it was intended to prevent parties from recklessly going upon the lands of others, and cutting and carrying away their wood and timber. It is liable, like all laws, by reason of their universality, to work a hardship in particular cases,

but generally it will, no doubt, operate as a wholesome regulation. The appellants in this case very likely think that they ought not to be required to pay anything more for the wood and timber taken and carried away by them than its actual value, as they had probable cause to believe, and did believe, when they carried it away, that the owners of the land had authorized them to do so. They could, however, have easily ascertained whether or not such was the real fact by consulting such owners, and if they had done so before engaging in the affair they would have avoided the difficulty in which they have become involved. A party should not, under such circumstances, rely upon what some other person informs him regarding such a matter. He should go to the owner of the property, and have his information verified, before he begins taking and carrying it away. I think respondents were entitled to have their damages for taking and carrying away the wood and timber in question trebled. This, taking the $370 as a basis, would make the amount which they were entitled to recover $1,110, which is $30 less than the amount of recovery adjudged by the said circuit court. The judgment appealed from will therefore be modified so that the respondent will recover said sum of $1,110 instead of $1,140.

Counsel for the appellants suggested some doubt on the argument as to whether or not the court had the right to treble the damages in such a case. I think, however, that the statute gives the authority to do so, in providing in said section 338 that if judgment be given for the plaintiff it shall be given for treble the amount of damages, etc. The authority to give judgment is vested in the court, and not in the jury. It isthe pronvice of the latter to find the facts, and return a verdict of their finding, upon which the court pronounces judgment. No costs or disbursements will be allowed to either party on the appeal. Each party, however, is required to pay one-half of the fees of the clerk of this court upon the appeal, and will be entitled to recover one-half of such fees of the adverse party in event of having to advance the whole of said fees to said clerk.