Argued October 3, modified October 16, 1917.

# [ADAMS v. CLOVER HILL FARMS.*

(167 Pac. 1015.)

**Waters and Watercourses—Pollution—Sewage and Refuse Matter.**

1. When the refuse from defendant's dairy-barn and dairy-house emptied into a swamp or swale having little current through a sewer, would, without some precaution, such as filtration in addition to a settling tank, maintained by defendant, become decomposed and putrid, pollute the water, cause noxious gases and smells, and affect the use and enjoyment of plaintiff's property on which the swale was partly situated, this constituted a nuisance.

**Waters and Watercourses—Surface Waters—Pollution.**

2. If the water in the swale constituted surface water and it became offensive from substances or liquids on defendant's land, it was defendant's duty to prevent it from flowing on plaintiff's land.

**Damages—Duty to Minimize—Nuisance.**

3. Where the water in a swamp or swale was rendered impure by refuse from defendant's dairy-barn and dairy-house, but with a very small amount of labor and expense, barrels or something of the kind for watering plaintiff's cattle could have been set at the edge of the swamp in plaintiff's lot, and the water allowed to percolate through the soil into the barrels, thereby obviating the impurity, it was plaintiff's duty to minimize the damage as much as he reasonably could.

**Waters and Watercourses—Pollution of Watercourse—Actions—Evidence.**

4. Substantial damages could not be recovered for defendant's pollution of the water in a swamp or swale situated partly on its land and partly on plaintiff's land by reason of which plaintiff's cattle did not gain in weight as they should, where none of the cattle were weighed and their feed was not weighed or measured, and the testimony as to their respective weights was a mere guess on plaintiff's part, and where it also appeared that the drainage from plaintiff's corrals went into the swamp, and it was not shown how much of the unpalatable taste of the water was contributed from plaintiff's premises, and how much from defendant's land.

[As to liability for pollution of stream by mining operations, see note in **Ann. Cas.** 1913D, 1082.]

---

*Authorities discussing the question of correlative rights of upper and lower proprietors as to use and flow of water in stream are collated in a note in 41 **L. R. A.** 737; particularly as to pollution of water, see page 751, of above note.

On liability of owner for pollution of watercourse by stock, see note in 26 **L. R. A. (N. S.)** 222.          REPORTER.

From Columbia: JAMES A. EAKIN, Judge.

Department 1.   Statement by MR. JUSTICE BEAN.

This is a suit brought by the plaintiff, Albert Adams, against the Clover Hill Farms, a corporation, to enjoin the maintenance of a nuisance.   From a decree in favor of the plaintiff granting the injunction and allowing damages in the sum of $300, the defendant appeals.

Plaintiff owns and resides upon a farm of 531 acres upon which he feeds about 75 head of beef cattle during a portion of the year.   Adjoining his land on the south defendant owns and operates a dairy farm of about 400 acres, upon which a modern dairy barn and other buildings are situated about 540 feet from the division line and approximately 1,040 feet from plaintiff's dwelling house.   A small swamp or bog about 60 feet in breadth at its widest part commences about 100 feet north of defendant's barn and extends to the boundary line.   A sewer or drain from the northern part of the dairy barn extends to the swamp or swale and a ditch constructed through near the center leads to the line fence.   From this point the swale extends at a diminished width past the plaintiff's two barns located near the swamp and between the line and his house with a narrow outlet across the county road and thence across the S. P. & S. Railroad where the water sinks on plaintiff's land.   There is a secondary irregularly shaped swamp or swale on the plaintiff's land joining with the other about 160 feet from the division line.   Plaintiff has two lots connected with his barns fenced so that the cattle which he usually feeds therein from about October to the following April can obtain water from the swamp.   The water drains from a basin of about 75 acres into the swamp out of which it flows during the rainy season.   In the dry season there is but

little water therein and none runs out. Plaintiff alleges and the trial court found, in substance, that for two or three years the defendant has maintained on the banks of this swale a dairy-house, cow-barns and hog-pens; that such buildings are connected with the swale by sewers or drains; that defendant has housed on an average of 100 head of cattle in the dairy-barn and continued to dump, wash, and empty daily large quantities of washings, manure, slops, garbage, refuse, and offal into said swale and stream and to pile and maintain on the banks of the swale, for the greater portion of each year, large piles of manure, and in and about the southerly portion of the swale hogs and hog-pens, from which the rain washed the filth and manure into the swale and thence into the stream, all of which were offensive and unhealthful and were carried down stream polluting the waters in front of plaintiff's house and barn; that the water of the swale thus became impregnated with myriads of maggots and filth and putrid matters, rendering it unfit for plaintiff's stock, and infecting the air with noxious smells, and impairing plaintiff's enjoyment of his premises; and that the condition constitutes a nuisance.        MODIFIED.

For appellant there was a brief and an oral argument by *Mr. William H. Powell.*

For respondent there was a brief with oral arguments by *Mr. Glen R. Metsker* and *Mr. Loyal H. McCarthy.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. There are two large volumes of testimony in the case from a reading of which we are satisfied that the evidence warrants an injunction of the deposit in the

marsh.    There is much dispute as to whether the swale should be designated as a stream.    This does not aid in the matter: See *Thomas* v. *Concordia Cannery Co.,* 68 Mo. App. 350.    There has been an effort on the part of the defendant to remedy the prevailing conditions in the swamp which has been successful to a certain extent.    Defendant contends that the nuisance, if any, has been abated.    Formerly all the refuse washed from the barn was allowed to enter the swamp.    Later there was connected with the sewer leading north from the dairy-barn a settling tank eight feet each way through which is usually passed about 700 gallons of water used in washing the barn daily after all the solids that can be shoveled up are removed, thus retaining the major part of the solid matter from the barn.    This tank was allowed to fill up and remain so during the winter of 1914, and was of no practical effect until the next April when it was cleaned out.    This probably occurred on account of a change in the management of the farm. When properly attended to the tank minimizes the amount of filth deposited in the swamp.    In order to retain the smaller particles of refuse which escape the settling tank and to cleanse to a reasonable extent the water used in the dairy-house in washing milk buckets, etc., it would seem that there should be some additional means of filtration before the discharge from the drain is permitted to mingle with the waters of the swale. In *Perry* v. *Howe Co-operative Creamery Co.,* 125 Iowa, 415 (101 N. W. 150), cited by defendant, which is similar to the present case, it is mentioned that a large cesspool had been constructed into which were drained all the washings from the creamery, and that the only outlet was a filtered drain.    It was held that there had been an abatement of the nuisance.    In the case at bar, owing to the advancement in sanitation, the defendant

has to deal with the water used to cleanse the barn, which feature did not appear in the Iowa case. This added to the refuse from the dairy-house, without some precaution, such as filtration, in addition to the facilities provided by the defendant, would if discharged into the swamp where there is so little current in the summer time become decomposed and putrid, pollute the water, cause noxious gases and smells, and affect the use and enjoyment of plaintiff's property, thus constituting a nuisance: Wood on Nuisances (3 ed.), § 561. We do not think that the nuisance has been abated. It seems reasonable that some method should be devised to prevent as far as practicable the contamination of the water of the swamp which, whether it flows as in an ordinary stream, or not, passes down on to plaintiff's premises during a portion of the season. During the dry season the conditions are apparently worse. There is also a drain or sewer, extending south from the south wing of the dairy-barn, about 68 feet in length connected with a settling tank. A tile drain passes within a few feet of this settling tank, but it does not appear that this sewer affects the swamp or plaintiff's premises.

2. The defendant is conducting an up-to-date dairy-farm in an ideal place in the county and should not be unreasonably hampered in the operation of its plant. It should, however, so use its property and conduct its business as not substantially to injure the plaintiff in the enjoyment of the possession of his property, or cause a menace to health, or trespass upon plaintiff's vested rights: *Ulmen* v. *Mt. Angel,* 57 Or. 547, 550 (112 Pac. 529, 36 L. R. A. (N. S.) 140); *Bourne* v. *Wilson-Case Lumber Co.,* 58 Or. 48, 51 (113 Pac. 52, Ann. Cas. 1913A, 245). See, also, *Templeton* v. *Williams,* 59 Or. 160 (116 Pac. 1062, 35 L. R. A. (N. S.) 468). If the

water in the swale should be designated surface water and if the same becomes offensive from substances or liquids upon defendant's land it is its duty to prevent it from flowing upon plaintiff's land: *Gawtry* v. *Leland,* 31 N. J. Eq. 385–389.   In his evidence plaintiff states that he does not complain of the pig-pens.   As the proprietor of the lower premises he has the right to demand that the dairy business of defendant be conducted with all due care so as to give as little annoyance as reasonably may be expected under all the existing circumstances: Joyce on Nuisances, § 269.

3. During the latter part of 1914 and until the taking of testimony in this case in March, 1915, plaintiff had 22 or 23 head of beef cattle in one lot and 50 in another. In the smaller lot a barrel was set in the ground at the edge of the swamp to afford a place for the cattle to drink.   In the other the brutes were compelled to drink from the swamp.   Plaintiff testifies that they were reluctant to drink the water on account of its impurity and that the larger number of cattle did not increase in flesh as much by 75 pounds as the smaller number although the cattle of each lot were fed all they would eat.   He thinks this difference in weight was owing to one corral of cattle having the barrel to drink from.   It is apparent that with a very small amount of labor and expense barrels or something of the kind could have been set at the edge of the swamp in the other lot and the water allowed to percolate through the soil in the barrels thereby obviating the objection.

4. According to a well-recognized rule of law it was the duty of plaintiff to minimize the damage as much as he reasonably could.   None of the cattle were weighed when they were put in the different lots, nor since.   Their feed was not weighed nor measured.   It

is a mere guess on the part of plaintiff as to their respective weights. As shown by the evidence and particularly by the photographs exhibited, the drainage from plaintiff's corrals during the wet season, while his cattle were being fed, went into the swamp and there is no way by which it can be determined how much of the unpalatable taste of the water for the stock was contributed from plaintiff's premises and what quantity from defendant's land. The damage to the cattle caused by the defendant is not proved by the testimony. We are therefore unable to concur with the learned trial court in the conclusion as to damages. Plaintiff is entitled to compensation in the nominal sum of $25. A modified order of injunction as herein indicated will be granted.

It is to be regretted that the effort made by the defendant to obtain a right of way over the premises of plaintiff for the purpose of draining the swamp was not successful. Such drainage would no doubt extinguish many frog songs and their usual accompaniment and exterminate the offensive features of the swamp.

The decree of the lower court will be modified in accordance herewith. Plaintiff should recover his costs in this court.                    MODIFIED.

MR. JUSTICE BURNETT, MR. JUSTICE BENSON and MR. JUSTICE HARRIS concur.

MR. CHIEF JUSTICE MCBRIDE took no part in the consideration of this case.