Argued April 1, reversed and remanded April 17, petition
for rehearing denied May 14, 1963

# UNITED STATES OF AMERICA *v.* FIRCHAU

380 P. 2d 800

*Margaret S. Willick,* Attorney, Department of Justice, Washington, D. C., argued the cause for appellant. With her on the briefs were Ramsey Clark, Assistant Attorney General of the United States, and Roger P. Marquis, Attorney, Department of Justice, Washington, D. C.; Sidney I. Lezak, Acting United States Attorney, and David Robinson, Jr., Assistant United States Attorney, Portland.

*Carl R. Neil,* Portland, argued the cause for respondent. With him on the brief were Krause, Lindsay & Nahstoll, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and DENECKE, Justices.

GOODWIN, J.

This is a timber-trespass action under ORS 105.815. The sole question is whether mitigation of damages (when allowable) must be calculated before or after the damages are doubled pursuant to the statute.

ORS 105.810. "* * * [W]henever any per-

son, without lawful authority, wilfully injures or severs from the land of another any produce thereof or cuts down, girdles or otherwise injures or carries off any tree, timber or shrub on the land of another person, or of the state, county, United States or any public corporation, * * * in an action by such person * * * against the person committing such trespasses if judgment is given for the plaintiff, it shall be given for treble the amount of damages claimed, or assessed for the trespass. In any such action, upon plaintiff's proof of his ownership of the premises and the commission by the defendant of any of the acts mentioned in this section, it is prima facie evidence that the acts were committed by the defendant wilfully, intentionally and without plaintiff's consent."

ORS 105.815. "If, upon the trial of an action included in ORS 105.810, it appears that the trespass was casual or involuntary, or that the defendant had probable cause to believe that the land on which the trespass was committed was his own or the land of the person in whose service or by whose direction the act was done, or that the tree or timber was taken from uninclosed woodland for the purpose of repairing any public highway or bridge upon the land or adjoining it, judgment shall be given for double damages."

The complaint contains the following:

"* * * * * *

"II.

"During the month of October, 1954, without authority and without consent of plaintiff, defendant entered the above-described land and cut down approximately 86,000 board feet of Douglas-Fir timber standing thereon thereby damaging this land in the amount of aproximately $1,913.50.

"III.

"Thereafter, plaintiff sold the timber which had been thus cut by the defendant for a total price of

$2,420.90, which sum represents the reasonable market value of this timber subsequent to its being cut.

"IV.

"By reason of the foregoing plaintiff has been damaged in the amount of $3,827.00, representing double stumpage pursuant to ORS 105.815, less $2,420.90, for a net balance of $1,406.10.

"* * * * * *."

Defendant filed a demurrer, and argued that when standing timber is felled and left lying upon the land, the trespasser is entitled to the benefit of any mitigation of damages that might be available to him by reason of the victim's ability to sell the timber left on the ground. The defendant contends that credit in mitigation must be given *before* the "damage" to the land can be "claimed or assessed". In other words, the defendant would have us hold, it is only the net damage or loss suffered by the landowner, after mitigation, that is to be doubled, or trebled, as the case may be.

The parties agree, at least for the purposes of the demurrer, that the damages to the land, in the absence of statute, would equal $1,913.50. This is also the exact value of the stumpage cut in the trespass. The plaintiff has not claimed any additional injury to the land. The parties agree that the plaintiff has realized $2,420.90 from a sale of the felled timber. The logs had gained in value some $5.90 per thousand board feet, the cost of having them felled and bucked. This left a net benefit to the plaintiff of $507.40 (for which the defendant can claim no credit and for which he makes no claim. See *O. & C. R. R. Co. v. Jackson,* 21 Or 360, 28 P 74 (1891)).

The defendant's computation of damages is as follows: Since the sum realized by the plaintiff in miti-

gation more than equals the original damages (stumpage value) which the plaintiff alleged, the net damage to the plaintiff is zero. Zero when doubled is still zero. Accordingly, says the defendant, the plaintiff has stated no cause of action.

Plaintiff, on the other hand, construes ORS 105.810 and 105.815 to mean that the landowner is entitled to compute the damage to the freehold caused by the trespass as of the time of the trespass. Plaintiff says it may thereafter apply the appropriate statutory multiple. In that manner plaintiff arrives at the sum of the defendant's basic liability, or $3,827.00. Then the plaintiff concedes that the defendant thereafter should have credit for the stumpage value of the logs left upon the land. The plaintiff is also willing to give the defendant credit for the enhanced salvage that was realized. As noted, the plaintiff's generosity in this respect is voluntary. The plaintiff's demand is thus the difference between the double damages so computed and the mitigation as set forth in the complaint.

The trial court adopted the defendant's formula and deducted enough of the amount realized out of the sale of the timber to equal the value of the stumpage alleged to have been wrongfully severed. The net was then zero. The trial court then entered an order sustaining the demurrer. The court necessarily believed that the net effect of the complaint was a failure to plead any damages.

The wording of the statutes appears to admit of either construction. The trial court, in its memorandum opinion, stated that it was persuaded to adopt the theory urged by the defendants because of two Oregon decisions, *Loewenberg v. Rosenthal,* 18 Or 178, 22 P 601 (1889), and *Kinzua Lbr. Co. v. Daggett et*

*al,* 203 Or 585, 281 P2d 221 (1955). While both cases describe results upon facts which lend some support to the trial court's decision, neither case is a square holding on the point in issue.

In the *Loewenberg* case, the parties and the court apparently treated the trespass as one *de bonis asportatis* instead of one *quare clausam fregit.* The record in that case does not reveal that the before-and-after value of the land was ever considered. Cordwood was the subject matter in controversy. The jury in the *Loewenberg* case made answer to a series of special interrogatories. The jury fixed the number of cords of wood taken as well as the number returned. The court then held that the statutory multiplication of damages ought to be accomplished after making an allowance in mitigation for the stumpage value of certain cordwood the defendants had delivered to the plaintiff's home. The case employs a rule found in cases involving trespass to personal property to the effect that the return of the property by the defendant may work a mitigation of damages. (The case also follows the familiar rule in trover cases that a converter who, by his own industry, enhances the value of personal property converted can not claim the benefit of the enhanced value.) The case concludes, however, by applying a forerunner of ORS 105.810 to the facts, and treble damages are awarded in an amount based on the net value of stumpage taken, after making allowance for the stumpage value of the wood returned. Since the plaintiffs had demanded that the gross value of the wood carried away from their land be trebled, the decision, which trebles only the net value, lends some support to the position of the defendants here. While the *Loewenberg* case could be distinguished on the ground that it was treated as a case involving

personal, rather than real property, we believe that the reasoning of the court with reference to matters relevant in the case at bar can not be distinguished, and that the trial court was justified in treating the case as persuasive, since it had not been overruled or limited by a later decision.

In the *Kinzua* case, the court was dealing with a stipulation between the parties in which the parties had agreed to a net figure of damages (which made allowance for mitigation) and then litigated only the question whether equity would permit the stipulated figure to be doubled under the statute. We held that the damages, once determined, were compensatory rather than punitive. We then held that such damages could be doubled by a court sitting in equity as well as by a court trying an action at law. We had no occasion to pass upon the correctness of the stipulation which liquidated the damages after allowing credit for logs remaining on the land. The parties in the *Kinzua* case were free to settle upon any figure they chose. In many cases, as an abstract matter, that method of settlement would be a fair one to follow. Whether the formula agreed upon in the *Kinzua* case is the one that must be followed in other cases, however, is the question we must now decide.

The defendant contends that in the case at bar the plaintiff might have alleged a cause of action under the statute, but pleaded too much. The defendant says the pleadings justify the order sustaining the demurrer. No matter what the actual damage to the freehold might have been, the plaintiff elected to plead a severance of stumpage and a net recovery of stumpage. The defendant's argument proceeds on the theory that the true measure of damages is the before-and-after value of the land. In this state there is no dis-

pute on this point. See *O. & C. R. R. Co. v. Jackson,* 21 Or 360, supra. For the rule elsewhere, see cases collected in Annotation, 69 ALR2d 1335, 1340 (1960). The defendant then says that since the complaint went beyond the pleading of the before-and-after value of the land and pleaded in paragraph III a salvage sale which exceeded the before-and-after measurement of damages alleged in paragraph II, the plaintiff had pleaded itself out of court.

If the complaint had stopped at the end of paragraph II, it clearly would have been invulnerable to demurrer. If the parties had gone to trial on such a complaint, the answer presumably would have set up the matters in mitigation. The question now before us would have been presented to the trial court on a motion for a directed verdict, assuming the evidence supported the pleadings. The real issue in the case would thus have to be decided in any event.

Whether we decide that the defendant's objection to the pleading was one that could not be taken by demurrer or that the demurrer was improperly sustained on the merits, we would in effect be deciding the same substantive question. We believe paragraph II of the complaint states a cause of action for damages (under ORS 105.810). The matter which followed, whether wisely or unwisely incorporated into the pleading, did not make the pleading vulnerable to demurrer. Such garrulity merely narrowed the issues for trial and relieved the defendant of the duty to prove mitigation.

■ As we have noted, the ordinary measure of damages in a trespass case is the before-and-after value of the land. It may well be, as a number of authorities indicate, that where the trespasser severs mature, mer-

chantable timber, a practical measure of such damages is the stumpage value of the standing timber. Stumpage ordinarily has a definite market value. A number of cases noted in 69 ALR2d at 1345 use the stumpage value as the exclusive measure of damages, but these are, for the most part, conversion rather than trespass cases. Since the law favors certainty in such matters, however, other authorities say that in the case of mature, marketable timber stumpage is the primary measure of damages whether the action sounds in trespass or in conversion. See, e.g., Falk, Timber and Forest Products Law 107 (Howell-North Press, Berkeley, 1958). In any event, whether stumpage equals damage or is merely some evidence thereof, there is no reason to hold a complaint fatally defective upon demurrer, merely because the pleader has characterized his measure of damages as "stumpage" instead of as "injury to the freehold." The real issue here is not what name to give the damages, but rather how and when to compute them.

■ In the case at bar, the plaintiff no doubt could have demanded additional damages, if any had been sustained, for injury to young growth, for costs of slash-disposal, and the like. *Miller v. Wykoff,* 346 Mich 24, 77 NW2d 264 (1956); *Feather River Lumber Co. v. United States,* 30 F2d 642 (9th Cir. 1929). The fact that the plaintiff was willing to disregard such damages, however, does not mean that the plaintiff would not be entitled to prove the damages which it was seeking.

■ The principle of mitigation, or, more properly, of the duty of a plaintiff to avoid reasonably avoidable losses following a trespass, is not a part of the statutory scheme expressed in ORS 105.810 and 105.815. It is a principle of common law that has been adopted

by the courts because justice requires it. There is no reason why the principle should not apply in statutory trespass cases. Generally, a victim of a trespass may not sit idly by and permit the damages caused by the trespass to be compounded by natural elements or by other causes if, in the exercise of slight care, he could prevent such enhanced injury to his land. See *Adams v. Clover Hill Farms,* 86 Or 140, 167 P 1015 (1917), where this court went to some length (if not, indeed, too far) in requiring an injured plaintiff to avoid the consequences of the flooding of his land by his neighbor. *Cf. Miller v. City of Woodburn,* 126 Or 621, 270 P 781 (1928). But the duty upon a plaintiff to suffer some slight inconvenience in protecting himself and his property from enhanced loss after a trespass should not be confused with the primary legal duty of a trespasser to pay for his wrong as of the time it was done. In the liability-creating sense of the word duty, the trespasser's duty is to refrain from doing the wrong. Liability for the wrong may be subject, in some cases, to partial relief, where mitigation can be given effect. The plaintiff, in a situation where mitigation is appropriate, is really under a disability to collect for avoidable losses, rather than under a duty to avoid the losses. See McCormick, Damages 128 (Hornbook Series, 1935).

Even when the foregoing principles are clearly understood, however, the question still remains: Are the plaintiff's damages to be assessed, for the purposes of the timber-trespass statute, before, or after, the mitigation of damage is taken into account. The question presents a choice of law. The choice must be made upon the basis of legislative intent. Since the statutes do not say when the computation is to be made, the courts must supply the answer in a manner that is

consistent with the purposes that are expressed or implied within the statutes themselves.

■ We hold that the actual damages suffered as the result of the trespass are to be computed and multiplied by the statutory factor before allowance is made for such salvage as the plaintiff, by its own diligence, realized, or could have realized. To hold otherwise would, in practical effect, repeal most of the statutory scheme. A simple illustration will show why. Suppose, instead of an innocent trespass, the cutting of the plaintiff's timber in the case at bar had been a wilful trespass within the meaning of ORS 105.810. If the defendant's formula correctly interprets the statutes, then a wilful defendant equally could escape liability for cutting the trees of another by leaving some of them on the ground. So long as the defendant leaves enough logs on the ground so that a vigilant owner could sell them for a price equal to the stumpage value of the timber cut, the owner who suffered the involuntary harvest of his timber would have to bear it in silence. Three times zero is the same as two times zero.

■ As we understand the legislative purpose expressed in ORS 105.810 and 105.815, the enhanced damages are to compensate the owner whose land is trespassed upon and to put tree cutters on notice that they cut beyond their boundaries at their peril. See *Gordon Creek Tree Farms v. Layne et al,* 230 Or 204, 221, 358 P2d 1062, 368 P2d 737 (1962); *Kinzua Lbr. Co. v. Daggett et al,* 203 Or supra at 595-596, 606. The defendant's interpretation of the statutes would defeat both of these purposes in most cases where mature standing timber is severed by a trespasser. We cannot believe the statutes were enacted to protect only the owners

of immature or ornamental vegetation, the result which would follow from the trial court's ruling.

■ Under ORS 105.810 and 105.815, the correct formula to follow in assessing damages is to determine the actual damage to the freehold, then double or treble such damages, as the facts of the case may indicate, then allow such sums in mitigation as may be appropriate in a given case. If mitigation were to be allowed before computing the damages to the land, there is no good reason why a defendant could not send the victim of the trespass a check for the value of the timber removed together with a sum to cover other incidental losses, and thereby wash out his liability altogether.

It therefore appears that the complaint in this case did state a cause of action upon which recovery could have been allowed, and that the trial court erred in sustaining the demurrer. The cause should be remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.