Argued and submitted July 9, 1993, judgment against Ardella Nielsen reversed;
otherwise affirmed March 23, petition for review denied May 24, 1994 (319 Or 149)

James E. HENDERSON
and Vera Henderson,
*Respondents,*

*and*

BOISE CASCADE CORPORATION,
*a Delaware corporation,*
*Plaintiff,*

*v.*

Owen CHRIS NIELSEN,
Ardelia M. Nielsen, aka Ardella M. Nielsen,
*Appellants.*

(90-09-10016; CA A73163)

871 P2d 495

Rick T. Haselton argued the cause for appellants. With him on the briefs was Lindsay, Hart, Neil & Weigler.

W. Eugene Hallman argued the cause for respondents. With him on the brief were D. Rahn Hostetter and Mautz Hallman Baum & Hostetter.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

LEESON, J.

## LEESON, J.

■     Owen and Ardella Nielsen[1] (defendants) appeal a judgment, following a jury trial, awarding plaintiffs tort damages arising out of a forest fire that originated on defendants' land.[2] We review the record in the light most favorable to plaintiffs, who prevailed on the jury verdict, drawing all reasonable inferences in their favor. *Brown v. J. C. Penney Co.*, 297 Or 695, 688 P2d 811 (1984). We reverse in part.

Defendants, a married couple, live in Oregon City, and own range and forest land bordering the Grand Ronde River in Wallowa County. Before 1988, Owen used the land three or four times a year for hunting, fishing and camping. In April, 1988, a neighbor told Owen that enactment of scenic river legislation might bar future timber harvesting along the Grand Ronde. The neighbor also told Owen that, because of the topography of his land, the only way to log it would be "cable logging."[3] The neighbor said that he would ask Burke Lathrop, owner of B. L. Lathrop Logging (Lathrop), to contact Owen. Owen and Lathrop entered into what they labeled a "timber sale agreement," which provides, in part:

"This timber sale agreement is made * * * between [Owen] Neilson [*sic*], * * * hereinafter called the SELLER and [Lathrop] * * * hereinafter called the PURCHASER.

"PARAGRAPH 1:

"The SELLER being the legal owner of the following described timber, agrees to sell and the PURCHASER agrees to buy, upon the terms and conditions hereinafter stated. * * *

"PARAGRAPH 2:

"* * * * *

"B.    The PURCHASER agrees to pay the seller for the said timber as measured by net Scribner Decimal C, Eastside Method Scale. *The PURCHASER shall make arrangements with each mill that buys the timber to make payments directly*

---

[1] Ardella Nielsen's name is misspelled "Ardelia" in the caption of the court documents throughout these proceedings.

[2] In this opinion, "plaintiffs" refers to James and Vera Henderson. At trial, Boise Cascade Corporation was also a plaintiff, and also obtained a judgment against defendants. However, this appeal involves only the Hendersons' claims.

[3] Cable logging is also known as "line logging" and "skyline logging."

*to the seller in the amounts contained in this agreement at the same time that payments are made to the PURCHASER.*

"\* \* \* \* \*

"D. *The title of the timber [shall] remain in the SELLER'S name until paid for by the purchaser.*

"\* \* \* \* \*

"PARAGRAPH 5:

"\* \* \* \* \*

"F. The PURCHASER agrees to maintain workman's [sic] compensation insurance in accordance with the laws of the State of Oregon." (Emphasis supplied.)

Ardella Nielsen was not a signatory to that agreement.

In May, 1988, Lathrop began cable logging on defendants' property. On August 23, 1988, Lathrop's crew was working in hot, dry conditions when a cable broke and whipped across the rocky terrain. It sparked a fire that burned for a week, and engulfed several adjoining properties, including 540 acres of plaintiffs' timberland.

Plaintiffs filed these claims against defendants to recover their damages caused by the fire. They asserted four claims for relief. One claim was dismissed pretrial, and is not a part of this appeal. Of the other three claims, the first sought to hold defendants directly liable for alleged "negligent hiring." In that claim, plaintiffs alleged that Lathrop's negligence in several particulars caused the fire, and that defendants negligently caused the fire by: selecting Lathrop to undertake the logging when defendant knew or should have known that Lathrop would use substandard practices; failing to adequately oversee the operation; and failing to suspend logging operations when the fire risk became severe. Plaintiff's second claim sought to hold defendants derivatively liable for Lathrop's negligence. In that claim, plaintiffs realleged each of the particulars in which Lathrop was alleged to have been negligent, and additionally alleged that cable logging on steep terrain during a time of extreme fire hazard was an inherently dangerous activity. By that additional allegation, plaintiffs sought to invoke the rule that a person may be vicariously liable for the negligence of the person's independent contractor, if the independent contractor is engaged in inherently dangerous activities. *See Wilson v.*

*P.G.E. Company,* 252 Or 385, 398-99, 448 P2d 562 (1969). The third claim asserted liability for negligent violation of ORS chapter 477.

The trial court ruled that cable logging under the circumstances at the time of the fire was, as a matter of law, an inherently dangerous activity.[4] The jury returned a special verdict for plaintiffs for $425,000.[5] The trial court entered judgment against defendants for double damages ($850,000) on the statutory claim.

■     We first consider Ardella Nielsen's contention that her motion for directed verdict should have been granted. Because the jury found for plaintiffs, we review to determine whether there is any evidence to support the verdict. *Brown v. J. C. Penney, supra.* Ardella argues that there is no evidence that she was a party to the timber sale agreement or that she ratified the agreement, and that there is no evidence that she took any action related in any way to plaintiffs' damages.

Plaintiffs acknowledge that "very little evidence was presented with regard to [Ardella's] activities." The sole evidence in the record that they rely on is that Ardella was a joint owner of the property with her husband. Plaintiffs also invoke, apparently for the first time on appeal, the statutory presumptions that private transactions have been fair and regular, OEC 311(1)(l), that the ordinary course of business has been followed, OEC 311(1)(m), and that the law has been obeyed, OEC 311(1)(x). Plaintiffs contend that, in the light of those presumptions, Ardella must be considered a party to the timber sale agreement, because otherwise her husband must have converted their jointly owned property to his sole use and benefit.

Even if those evidentiary presumptions would have benefitted plaintiffs, had the jury been instructed on them, it does not appear that the jury was ever made aware of them.

---

[4] That ruling is not assigned as error, and consequently we do not address that issue.

[5] The special verdict form asked the jury whether Lathrop was negligent in any of the stated particulars, whether defendants were negligent in the stated particulars, and the amount of plaintiffs' damages. The trial court treated application of those facts to plaintiffs' claim under ORS chapter 477 as a matter of law. There is no issue on appeal regarding that procedure.

114

Plaintiffs point to no evidence in the record, and we find none, that would support the jury's verdict against Ardella. The trial court erred by denying Ardella's motion for directed verdict on all claims.

■　　　We turn to plaintiffs' claims against Owen (hereinafter defendant). Defendant first contends that the trial court erred by denying his motion for directed verdict, because, he maintains, a seller of timber is not liable for damages caused by the negligence of the buyer.

An essential premise of his contention is that Lathrop was a buyer under the timber sale agreement. Plaintiffs argue that that premise is false, and that Lathrop was an independent contractor with respect to the harvesting of the timber.

ORS 72.1060(1) defines a "sale," for purposes of that chapter, as "the passing of title from the seller to the buyer for a price." Although that definition is not controlling in this case, it accurately states the nature of a buyer-seller relationship. Passage of title from the seller to the buyer is essential.

Under the so-called timber sale agreement, Lathrop was required to cut and remove specified timber. It was then required to make arrangements to sell the timber to a mill. The mill was to make direct payment to defendant of the amount due on the contract. The contract further provides that title to the timber remains with the seller until he receives payment.

Under the terms of the contract, title to the timber remained with the seller, defendant, until the mill paid him the contract price. At that time, title to the timber passed to the mill. At no time was title to the timber with Lathrop. Because Lathrop never held title to the timber, it was not a buyer of the timber. With respect to the transfer of title from defendants to the mill, Lathrop's status was analogous to a broker. With respect to the logging operations, Lathrop was, at best, an independent contractor.

The conclusion that the contract between defendant and Lathrop is not a sales contract is bolstered by the provision of the agreement that Lathrop was responsible for maintaining workers' compensation insurance. Allocation of

responsibility for workers' compensation insurance is consistent with an independent contractor relationship.

Because the premise that Lathrop was a buyer under the timber sale agreement fails, we need not decide whether a seller of timber may be held liable based on the negligent logging practices of the buyer. The trial court did not err by denying defendant's motion for directed verdict on the ground that he could not be held liable based on Lathrop's negligence.

Defendant next contends that the trial court erred by refusing to withdraw two specifications of Lathrop's negligence from the jury's consideration. Plaintiffs alleged that Lathrop's negligence in several particulars caused their damages, including its negligence in:

"(a)   Overloading the skyline;

"(b)   Using a skyline that had been weakened in a previous fire;

"(c)   *Using a skyline that had been spliced many times*;

"(d)   *Improperly splicing the skyline*;

"* * * * *

"(f)   Failing to temporarily suspend the line logging operation under the circumstances then prevailing." (Emphasis supplied.)

Defendant moved to withdraw the emphasized specifications of negligence from the jury's consideration on the ground that no evidence supported them. That motion was denied. The special verdict for plaintiffs did not disclose which specification(s) of Lathrop's negligence the jury relied on.

■   A specification of negligence must be withdrawn from the jury's consideration, upon a proper motion, if there is no evidence to support it. If such a motion is made and erroneously denied, and the verdict does not disclose whether the jury relied on a supported or an unsupported specification of negligence, the remedy is a new trial. *Whinston v. Kaiser Foundation Hospital*, 309 Or 350, 359, 788 P2d 428 (1990).

■   With regard to the allegation of "improperly splicing" the cable, defendant concedes that there was evidence of improper splicing, but contends that plaintiffs presented no evidence that the improper splicing caused their damages.

Defendant argues that the evidence of improper splicing consisted of evidence that Lathrop used a method called "jump splicing," which did not meet the standard of care. However, plaintiffs' own expert testified that the cable failure did not occur at or near a jump splice, and that jump splicing did not cause the cable failure in this case. That evidence was not controverted. Defendant maintains, therefore, that there was no evidence that jump splicing caused plaintiffs' damages.

Plaintiffs respond that defendant's argument seizes on one example of improper splicing—jump splicing—and that, even if there was no evidence that that jump splicing caused their damages, there was abundant evidence that other improprieties in splicing the cable did cause their damages.

There was expert testimony that: The fire was caused by a failed cable used by Lathrop to cable log defendant's property; the cable previously had been exposed to a fire; a reasonably prudent operator would not have continued to use the cable after that exposure, because of its weakened condition; rather than discarding the weakened cable, Lathrop repeatedly spliced it; anytime a cable is spliced, it is weakened; and the multiple cable failures that caused the fire in this case occurred within a nine foot stretch of cable, spanning the site of one of those splices.

Viewing the record in the light most favorable to plaintiffs, a jury could find that it was improper to splice the cable after it had been exposed to the previous fire. A jury could also find that splicing the cable further weakened it, and that the cable failures surrounding one of the splices were caused, at least in part, by that splice. There was sufficient evidence that improper splicing caused plaintiffs' damages.

With regard to the "multiple splicing" specification of negligence, defendant contends that there was no evidence that multiple splicing is negligent. As explained above, a jury would be entitled to find that any splicing was negligent in these circumstances. It follows that it could find that multiple splicing was also negligent. As above, there was sufficient evidence that splicing the cable, multiply or otherwise, caused plaintiffs' damages. The trial court did not err by refusing to

withdraw those specifications of negligence from the jury's consideration.

We next turn to defendant's contentions regarding the jury instructions on the measure of plaintiffs' damages for the lost timber on their land. Plaintiff James Henderson testified that he would not have logged the land for 15 or 20 years. The parties agree that, although plaintiffs' lost timber was "merchantable" at the time of the fire, it was not yet at optimum maturity for harvesting. They disagree as to the proper valuation of that loss.

Plaintiffs' requested jury instruction was that their damages were the value of their lost timber at the future date when they would have sold it, discounted to present value. Defendant excepted to that instruction as follows: "We object to plaintiffs' requested instructions 25 and 24 * * * to the extent that they are inconsistent with our requested 29 and 29-A." They continued:

> "We think those are abstract and also do not correctly state the measure of damages under the law and in particular believe that our requested instructions 29 and 29-A did state the correct measure of damages."

Defendant's requested instructions 29 and 29-A were that the measure of damages for lost merchantable timber is its "stumpage value." Stumpage value is "the market value of timber before it is cut; the amount that a purchaser would pay for standing timber to be cut and removed." *Gerdes v. Bohemia, Inc.*, 88 Or App 62, 67, 744 P2d 275 (1987). The trial court overruled defendant's exception to plaintiffs' requested instruction, and refused to give defendant's requested instructions 29 and 29-A. Defendant assigns error to both rulings.

■■ We first consider whether the trial court erred by refusing to give defendant's requested instruction. Under that measure of damages, plaintiffs would be awarded the price that they would have received if they had sold their merchantable timber to a mill on the day of the fire. As a general rule, the function of tort damages is to compensate the injured party for its loss. *See, e.g., McKee Electric Co. v. Carson Oil Co.*, 70 Or App 1, 7, 688 P2d 1360 (1984), *aff'd* 301

Or 339 (1986). If plaintiffs are correct that their merchantable timber was still appreciating at the time of the fire, which defendant does not dispute, then defendant's proposed measure of damages fails to compensate plaintiffs for a significant portion of their loss.

Nonetheless, defendant contends that stumpage value is the "proper" measure of damages in Oregon for lost merchantable timber. He relies on *United States v. Firchau*, 234 Or 241, 380 P2d 800 (1963), for that proposition. However, in *Firchau* the parties stipulated to the actual damages to the plaintiff's land. Therefore, it was not necessary for the court to decide "whether stumpage equals damage or is merely some evidence thereof." 234 Or at 249.

If anything, the *Firchau* court indicated a preference for the measure of damages as the difference between the value of the land before the timber was lost and its value afterwards. That measure accounts for the foreseeable appreciation (or depreciation) of maturing trees, and discounts for the possibility that an intervening event will make it impossible to harvest them. Therefore, it adequately compensates the plaintiff for its entire loss. Furthermore, the value of the land can be determined with certainty. Because defendant's proposed measure of damages was inadequate, the trial court did not err by refusing to instruct the jury in accordance with that measure.

■ We turn to defendant's contention that the trial court erred by giving plaintiffs' requested instruction on the measure of damages. Defendant argues persuasively that the value of timber in general, and plaintiffs' trees in particular, 20 years from now, is speculative. The value depends on a host of factors, including market fluctuations, political and technological developments, fire and infestation. However, that argument is made for the first time on appeal.

Assuming, without deciding, that the instruction given by the trial court improperly allowed the jury to award overly speculative damages,

> "no instruction given to a jury shall be subject to review upon appeal unless its error, if any, was pointed out to the [trial court] and unless a notation of an exception is made immediately after the court instructs the jury." ORCP 59H; *see*

*also Thompson v. Inskeep*, 95 Or App 688, 770 P2d 953 (1989).

Defendant's exception to the court's jury instruction was on the ground that it was inconsistent with his proposed instructions 29 and 29-A. His exception did not alert the trial court to his contention that the measure of damages was too speculative.[6] We conclude that the error, if any, in the trial court's instruction is not preserved.[7]

■ Finally, defendant argues that the trial court erred by entering judgment for double damages on plaintiffs' claim under ORS chapter 477. ORS 477.090 provides, in relevant part, that a private owner of property

"whose property is injured or destroyed by fires in violation of ORS 526.041 or this chapter may recover in a civil action double the amount of damages suffered if the fires occurred through wilfulness, malice or negligence."

Plaintiffs contend that the fire in this case was in violation of ORS 477.064, which provides, in part:

"Any fire on any forestland in Oregon burning uncontrolled or without proper action being taken to prevent its spread, notwithstanding its origin, is declared a public nuisance by reason of its menace to life and property."

Defendant responds that the exclusive statutory liability for creating a nuisance under ORS 477.064 is for the cost of abating the nuisance, as provided in ORS 477.068.

Defendant is correct that an "owner" or "operator," as those terms are defined in ORS 477.001(16) and (17), may be liable under ORS 477.068 for the cost of abating a nuisance. However, there is no indication that that provision was intended to be a shield from liability for other damages caused

---

[6] Defendant's exception also argued that the instruction was "abstract." If anything, that exception preserved the contention that the instruction was too difficult to understand. *See Webster's Third New International Dictionary* 8 (unabridged 1971) (defining "abstract").

[7] Defendant also assigns error to admission of certain evidence as relevant to plaintiffs' damages. Plaintiffs' expert testified, over defendant's objection, regarding the future value of plaintiffs' lost merchantable timber. Defendant's objection was on the same ground as his exception to the jury instruction: The proper measure of those damages is stumpage value. As explained above, stumpage value would not adequately compensate plaintiffs for their loss. The trial court did not err by refusing to limit plaintiffs' evidence of damages to evidence of stumpage value.

by the nuisance. ORS 477.068 and ORS 477.090 address two different types of damages. The former describes defendant's liability to the responsible public body for its fire fighting costs. The latter describes his liability to other landowners for their damages caused by the fire before it could be abated. Potential liability for fire fighting costs does not preclude liability for damage to property. The trial court did not err by entering judgment for double damages under ORS 477.090.[8]

Judgment against Ardella Nielsen reversed; otherwise affirmed.

---

[8] Defendant's argument that recovery of both future growth damages and statutory double damages constitutes impermissible "double dipping," does not require discussion.