## Reginald F. Lavalette, Kenneth D. Bean, Burton W. Bean, Bernard J. Lavalette and William Bean v. Warren A. Noyes and Warren A. Roby

[ 205 A.2d 413 ]

October Term, 1964

Present: Holden, C. J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed December 1, 1964

*Arthur and Arthur* for plaintiffs.

*Leinwohl and Fitzpatrick* for defendant Noyes.

**Holden, C. J.** The plaintiffs are the owners of a hunting camp which they constructed on a wooded site in the town of Fayston. The property was purchased in 1957 from Mrs. Fernande Viens. At that time, there was a stand of spruce along the southern portion of the property which provided a natural habitat for game. It included a deer run.

This action is for trespass, brought under 13 V.S.A. §3606. The plaintiffs seek treble damages under the statute for the cutting and removal of some twenty-nine trees that were growing in the spruce grove on the camp site. The cause was heard by the Chittenden County Court, sitting without a jury.

The plaintiffs' case was presented on the theory that the defendants Noyes and Roby joined with Napoleon Boudreau in conducting a logging operation on an adjacent wood lot under cutting rights acquired from Mrs. Viens. The plaintiffs claimed that the defendants exceeded the limits of the Viens property and invaded the area which the owner had previously conveyed to the plaintiffs.

In its findings the trial court stated it was unable to find that the defendant Roby had any connection with the logging job and discharged him from liability. The court determined that the operation was conducted by the defendant Noyes and Boudreau. It appeared in the evidence that Mr. Boudreau, who was Noyes' stepfather, had since deceased.

The findings report that the court was not satisfied that the cutting on the plaintiffs' land was done through mistake nor upon the mistaken belief by the defendant that he was authorized to cut there.

The defendant Noyes was adjudged liable in treble damages. In this appeal, he challenges the judgment on two principal assignments of error. The first is directed to the admission of evidence given by

Mrs. Viens. This witness testified over the defendant's objection that before the cutting started, Boudreau and the defendant signed a paper which she had written out in longhand. The writing concerned the proposed logging operation. She had destroyed the memorandum a few months before trial at a time when she moved her family to a different residence. She gave no testimony about the specific contents of the writing but testified only to the fact that it was signed by the defendant and his associate Boudreau.

■ The defendant claims the reception of this evidence offends the best evidence rule in that the instrument was intentionally destroyed by the witness before trial. The rule had no application here. Production of the original document is required to establish the provisions it contains, but the requirement does not exclude evidence which is not aimed at the contents of the instrument. *Wetmore & Morse Granite Co.* v. *Ryle*, 93 Vt. 245, 251, 107 Atl. 109; 4 Wigmore, Evidence §1242 *et seq.* (3rd Ed.). Since the parol evidence related to the fact of who signed the paper, it was properly received.

■ Furthermore, no presumption of falsity arises from the destruction by Mrs. Viens. It was not done by the plaintiffs nor at their direction. It was done by an outsider who had no apparent reason nor obligation to preserve it. See Wigmore, Evidence §1198 (3rd Ed.).

The second error assigned challenges the sufficiency of the evidence to support the court's determination that the defendant participated in the cutting as a part of a joint logging operation which he conducted with Boudreau. Against this, Noyes contends he was merely an employee of Boudreau—that the undisputed evidence establishes this relationship and no more.

Going directly to the testimony given by the defendant Noyes himself we find adequate support for the result reached in the trial court. He testified that he accompanied Boudreau to visit Mrs. Viens before the project was undertaken. He was present when the conversation took place which resulted in the acquisition of the cutting rights on the Viens property. He voiced his opinion as to whether the work should be undertaken. He accompanied Mrs. Viens when she went on the woodlot and she pointed out the property lines.

The defendant was asked on cross examination: "Was there a talk before you undertook cutting trees with Mrs. Viens a day or two be-

fore the cutting started? A. Yes, there was. Q. Then before you started to cut logs some agreement was entered into, is that right? A. Yes, as to what we would pay per thousand."

The defendant maintained that all of the cutting was done by Boudreau, yet he stated that he helped "limb" the trees that had been felled. He explained that he did not work near the plaintiffs' camp for the reason that he was sick when this cutting was done.

It. appears from the defendant's testimony that his main function in the operation was to load logs at the job and truck them to the mill of the purchaser, Plant & Griffith Lumber Company. As to this, he was questioned whether he received any money from the purchaser. His reply—"My step-father did." He was then asked: "Was that divided with you?" The defendant replied—"I received half of the take after the expenses were paid."

The evidence presented at the trial clearly indicates that the defendant counseled and engaged in the agreement with Mrs. Viens. He was present when the plaintiffs' boundary was pointed out on the ground. He assisted with cutting when there was a shortage of logs. He was compensated from the logs that were cut, including the timber that was harvested on the lands of the plaintiffs. These factors in the proof, when confirmed in the findings, were legally sufficient to establish the defendant's liability for trespass as a principal. *Whitman* v. *Lowe,* 98 Vt. 152, 157, 126 A. 513; *Munson* v. *Goodro,* 124 Vt. 282, 204 A.2d 126.

The trial court awarded damages on the basis of 2,418 feet of marketable spruce at $55 per thousand, with an additional sum allowed for some thousand feet of logs which were left lying on the ground in the amount of $45.00. The court· compensated the plaintiffs for anticipated removal of the slash. The defendant claims error in this aspect of the findings since it is not based on the difference in the value of the land, before and after the trespass. He cites *Kilby* v. *Erwin,* 84 Vt. 266, 78 Atl. 1021.

The case upon which the defendant relies imposes no exclusive measure of damages in assessing damage involving the loss of growing trees. Quite to the contrary, the Court pointed out that the elements of damage vary with the kind, condition, location and use of the trees that were damaged. When the value of the trees separate from the soil will not furnish just compensation, the injured owner

may resort to the rule advanced by the defendant. *Kilby* v. *Erwin, supra,* 84 Vt. at 273-274.

In the present case, the trial court considered the value of the spruce as marketable logs, together with the cost of removing the tops and limbs as fair and reasonable compensation for the damage inflicted. In this there was no error. See, *O'Brien* v. *Dewey,* 120 Vt. 340, 349-350, 143 A.2d 130.

*Judgment affirmed.*