PERRY-GRIFFIN FOUNDATION v. PROCTOR

[107 N.C. App. 528 (1992)]

PERRY-GRIFFIN FOUNDATION, A NORTH CAROLINA CORPORATION, PLAINTIFF V. JIMMIE PROCTOR, JOSEPH ANTHONY WETHERINGTON, JR., RAYNOR-WOOD, INC., A CORPORATION OF NORTH CAROLINA, BILL MORRIS, MIKE WOODARD, AND FREDDIE PRICE, DEFENDANTS

No. 913SC535

(Filed 6 October 1992)

1. **Trespass § 8.2 (NCI3d) — wrongful cutting of timber — damages doubled before credits subtracted**

   The trial court erred in failing to double damages for defendant's unlawful cutting of timber from plaintiff's lands. Any credit to defendant for proceeds recovered by plaintiff and for the value of timber left on the ground at the tract should have been deducted after the damages were doubled. N.C.G.S. § 1-539.1(a).

   **Am Jur 2d, Logs and Timber § 135.**

2. **Rules of Civil Procedure § 59 (NCI3d) — new trial improperly awarded — no grounds advanced by defendant as basis — abuse of discretion**

   In an action for trespass and for damages resulting from defendant's unlawful cutting of plaintiff's timber, the trial court erred in granting defendant a new trial on his counterclaim that plaintiff breached its contractual obligation to put forth its best efforts to facilitate the sale of the property in question to defendant, since the basis for the trial court's order was not grounded on reasons advanced by defendant for making the motion, and the trial court's order was an abuse of discretion. N.C.G.S. § 1A-1, Rule 59.

   **Am Jur 2d, New Trial §§ 36, 551.**

APPEAL by plaintiff from judgment and order entered 3 January 1991 by Judge I. Beverly Lake, Jr., in PAMLICO County Superior Court. Heard in the Court of Appeals 7 April 1992.

*Henderson, Baxter & Alford, P.A., by David S. Henderson, for plaintiff appellant.*

*Barrington, Herndon & Raisig, P.A., by Carl A. Barrington, Jr., and Cheryl C. Garcia, for Jimmie Proctor, defendant appellee.*

COZORT, Judge.

Plaintiff brought an action against defendants for trespass on land and for damages resulting from defendants' unlawful cutting of plaintiff's timber. One defendant counterclaimed for breach of contract alleging failure on the part of plaintiff to use its best efforts to facilitate the sale of the timberland in question pursuant to an option contract. The trial court submitted nine issues to the jury. The jury's verdict was favorable to the plaintiff, finding that defendant Proctor trespassed upon plaintiff's land and cut timber valued at about $20,000.00. Defendant Proctor moved for judgment notwithstanding the verdict, which was denied, and for a new trial, which was also denied. Plaintiff moved the trial court to double the timber damages; the court reserved ruling on plaintiff's motion. Defendant Proctor later moved the trial court to reconsider the denial of his motion for a new trial. Six months later, the trial court ruled that previous recoveries of plaintiff against defendant must be deducted from the timber damages verdict amount before the verdict was doubled. The trial court found the credits to be $20,140.00, leaving no damages to double. The trial court also entered an order granting defendant's motion for a new trial on its counterclaim. On appeal, plaintiff makes the following contentions: (1) the trial court erred by refusing to allow plaintiff to recover double damages pursuant to N.C. Gen. Stat. § 1-539.1 for the unlawful cutting of timber; and (2) the trial court erred in granting defendant Proctor's motion for a new trial as to his counterclaim. We agree with plaintiff and reverse.

Plaintiff Perry-Griffin Foundation ("Foundation") is a non-profit charitable North Carolina corporation created by the will of Clare G. Perry, who died in 1965. The will provided for the establishment of a charitable trust to fund the construction of a home for elderly ladies with "limited means." Other units were to be built as funding became available. The Foundation was also to award a $10,000.00 college scholarship loan to "worthy students." The will placed the following limitation on the Foundation's power to fulfill the trust's purposes: "No real estate is to be sold, however, it may be leased at the discretion of the directors, provided however, the timber may be sold at the discretion of the directors." Despite the Foundation's income from its rental properties, timberlands, and stocks and bonds, the corporation was unable to generate sufficient funds necessary to construct the ladies' home and to fund the college scholarship. Consequently, on 16 July 1987, the Foundation entered

into an option contract with defendant Proctor to acquire all of the Foundation's timberlands. The lands were to be sold for $2,200,000.00 to be paid in yearly installments plus interest. A memorandum signed by the parties indicated the sale of the timberlands was contingent "upon the Court's authorizing and empowering the Foundation to sell and convey said property." The memorandum additionally stated, that "[n]othing herein shall be construed to relieve the Foundation from putting forth its best efforts to facilitate the sale of said property to Proctor and to carry out the terms and conditions of the Option Contract attached hereto."

The Foundation subsequently brought a *cy pres* action pursuant to N.C. Gen. Stat. § 36A-53(a) (1991). The Foundation requested the court to allow the trustees "to permit the sale of its assets, including real estate," and to allow other changes in the administration of the trust. As required by N.C. Gen. Stat. § 36A-53(a), the Attorney General was notified and made a party to the action; defendant Proctor intervened as a party plaintiff. The *cy pres* action was heard on 5 February 1988. The court concluded: (1) the restraint on alienation of land in Ms. Perry's will was not void against public policy; (2) the purposes of the trust had become impossible or at least impracticable to fulfill because the inability to sell or convey any real estate prevented the trust from generating sufficient income to pay for the objects of the trust; and (3) the doctrine of *cy pres* should be invoked pursuant to N.C. Gen. Stat. § 36A-53 to order an administration of the trust as nearly as possible to fulfill the manifested general charitable intention of the testatrix. The court then provided

> the sale of real assets be made first from the sale of rental property, and only so much thereof as is necessary to effect the purposes of the charitable trust; and that if the sale of such rental property is insufficient to meet the needs and purposes of the trust, then so much of the timber lands as is necessary to accomplish the said ends of the trust.

Intervenor-plaintiff Proctor appealed the judgment to the Court of Appeals. On 2 May 1989, this Court in an unpublished opinion affirmed the trial court's judgment. *Perry-Griffin Foundation v. Thornburg*, 93 N.C. App. 790, 379 S.E.2d 114 (1989). Discretionary review to the North Carolina Supreme Court was denied on 6

September 1989. *Perry-Griffin Foundation v. Thornburg*, 325 N.C.
272, 384 S.E.2d 518 (1989).

While the *cy pres* action was pending in early December 1987,
defendant Proctor contacted the Foundation's attorney and expressed
a desire to cut some timber on the property under the option.
The attorney explained he would present the request to the trustees;
the board never reached a decision as to the request. On or about
7 December 1987, the defendants began cutting timber on plaintiff's
lands without its knowledge, consent, or authority. The present
action was instituted on 13 December 1987, to restrain the unlawful
cutting and to recover damages double the amount of the unlawfully
cut timber pursuant to N.C. Gen. Stat. § 1-539.1 (1983). Defendants
Proctor and Wetherington filed three counterclaims; two were
dismissed. The third counterclaim alleged that the court in the
*cy pres* action failed to authorize the sale of plaintiff's timberlands
to Proctor because plaintiff did not effectively appeal the judgment
to the Court of Appeals. Defendant alleged the Foundation's actions
thereby breached the option contract which imposed an obligation
on the Foundation to use its "best efforts" to secure a judgment
allowing the Foundation to sell the land. Defendant Wetherington
took a voluntary dismissal as to the third counterclaim, leaving
only defendant Proctor asserting the counterclaim.

Following trial on the issues, the jury returned a verdict which
established: (1) defendant Proctor was a trespasser on plaintiff's
property; (2) Proctor cut and removed timber from plaintiff's prop-
erty; (3) the value of the unlawfully cut timber totalled $22,000.00;
(4) plaintiff did not breach its duty to put forth its best efforts
to facilitate the sale of the property to Proctor; (5) Proctor failed
to substantially perform his obligations arising out of the option
contract; and (6) Proctor sustained zero damages. In open court,
defendant Proctor made a motion for a new trial and a motion
for judgment notwithstanding the verdict. The trial judge denied
both of defendant's motions and reserved ruling on plaintiff's mo-
tion to double the $22,000.00 value assigned to the timber. Several
months later, on 31 December 1990, the trial judge signed a judg-
ment which denied plaintiff's motion to double the timber value,
finding that credits to defendant left no damages to double. The
trial judge then entered a separate order granting defendant
Proctor's motion for a new trial on his third counterclaim. Plaintiff
appealed.

[1]   We first consider whether the trial court erred in failing to double the damages for the unlawful cutting of timber pursuant to N.C. Gen. Stat. § 1-539.1(a) (1983), which reads:

> Any person, firm or corporation not being the bona fide owner thereof or agent of the owner who shall without the consent and permission of the bona fide owner enter upon the land of another and injure, cut or remove any valuable wood, timber, shrub or tree therefrom, shall be liable to the owner of said land for double the value of such wood, timber, shrubs or trees so injured, cut or removed.

Here, we find the trial judge erred by refusing to instruct the jury to award double damages and by subsequently failing to order double damages. The phrase "shall be liable" in the statutory provision provides that double damages must be ordered when the requirements of the statute are met. The plain language of the statute indicates that an award of double damages is not within the judge's discretion. We have previously upheld the entry of judgments in an amount double to what the jury determined the value of the unlawfully cut timber. *See, i.e., Tyson v. Winstead,* 15 N.C. App. 585, 190 S.E.2d 281 (1972); *Dawson v. Sugg,* 32 N.C. App. 650, 233 S.E.2d 639 (1977). Furthermore, a comparison of N.C. Gen. Stat. § 1-539.1 to N.C. Gen. Stat. § 75-16 (1988) supports our conclusion. The mandatory award of double damages pursuant to N.C. Gen. Stat. § 1-539.1 is similar to treble damages automatically assessed pursuant to N.C. Gen. Stat. § 75-16 in cases involving unfair and deceptive trade practices. Our Supreme Court has discussed the mandatory nature of treble damages in the latter cases: "absent statutory language making trebling discretionary with the trial judge, we must conclude that the legislature intended trebling of any damages assessed to be automatic once a violation is shown." *Marshall v. Miller,* 302 N.C. 539, 547, 276 S.E.2d 397, 402 (1981). Similarly, the $22,000.00 amount assigned to the value of the cut timber should have been doubled to equal a $44,000.00 judgment against defendant Proctor. Because plaintiff has stipulated that defendant be allowed a credit for proceeds recovered by plaintiff and for the value of timber left on the ground at the tract, defendant is entitled to a credit from the $44,000.00 judgment in the amount of $20,140.00.

[2]   We next determine whether the trial court erred in granting defendant a new trial on his counterclaim. Defendant's counterclaim

asserts the Foundation breached "its contractual obligation to put forth 'its best efforts to facilitate the sale of said property' to Proctor and to carry out the terms and conditions of the option contract" by (1) presenting evidence to the trial court hindering the sale of said property to Proctor which was inconsistent with carrying out the terms and conditions of the option contract; (2) colluding with others having interests opposed to the sale of the property; (3) failing to cooperate during the appeal from the decision of the trial court in the *cy pres* action which declined to approve the sale of the property to Proctor; and (4) refusing to ask the trial court for an order to enable the Foundation to honor its agreement with Proctor after the Court of Appeals affirmed the trial court's decision. Defendant's counterclaim centers on the Foundation's conduct at the initial bench trial which adjudicated the *cy pres* issue and determined the Foundation would not be permitted to sell the timberland until the Foundation had sold all rental property in its possession. At the second trial, which is the subject of this appeal, defendant called Mr. A.D. Ward, an expert in real estate contract law and civil litigation, to render an opinion that the Foundation was not diligent in facilitating the sale to Proctor and in carrying out the terms and conditions of the option contract in good faith. Mr. Ward's testimony included in pertinent part:

> It is my professional opinion that the Foundation breached its duty to put forth its best efforts to facilitate the sale of the property contract. The Foundation terminated its effort to have the contract approved in my opinion after, or when it put Sam Hughes on the stand at the February 5th hearing .... It is my opinion that the effort put forth by the Foundation really was designed to kill the contract.
>
> . . . The will provides that no real estate shall be sold, which is a restraint on alienation of real property. The Supreme Court of North Carolina has held that with respect to charitable trust [*sic*] such as this, it is not void; but, of course, the Court has held that that can be waived and that was the purpose of the lawsuit.

The remainder of Ward's testimony discloses that he testified in depth as to the doctrine of *cy pres* and to the proceedings which occurred prior to and at the 5 February 1988 hearing. Plaintiff then called a rebuttal witness, Mr. George W. Boylan, an attorney with the Attorney General's office, to rebut defendant's evidence.

Mr. Boylan rebutted Ward's testimony, stating that the Foundation had used its best efforts at the *cy pres* hearing. It is Boylan's testimony which serves as the basis for the trial court's decision granting defendant a new trial as to his counterclaim.

As an initial matter, we note that defendant's motion for a new trial was improperly identified as a motion pursuant to N.C. Gen. Stat. § 1A-1, Rule 60 (1990), rather than pursuant to N.C. Gen. Stat. § 1A-1, Rule 59 (1990). However, it is clear from the trial court's order that the motion for a new trial was treated as having been made pursuant to Rule 59, despite the improper designation. Therefore, we examine the trial court's order for a new trial by applying the standards applicable to a Rule 59 motion. Our scope of review of a trial court's ruling either granting or denying a motion to order a new trial is strictly limited to the determination of whether the cold record demonstrates a manifest abuse of discretion. *Worthington v. Bynum*, 305 N.C. 478, 482, 290 S.E.2d 599, 602 (1982). A trial judge's order granting a new trial may be reversed on appeal only in circumstances where an abuse of discretion is clearly shown. *Id.* In the case below, the defendant's request for a new trial was made "on the basis that this Defendant was not afforded an opportunity to depose George Boylan prior to trial and adequately prepare for his cross-examination, resulting in unfair surprise and prejudice to said Defendant." The trial judge denied defendant's original motion made on 7 June 1990; however, the trial court granted defendant's motion to reconsider defendant's demand for a new trial made on 18 June 1990. The trial court, in granting the motion, stated, "the Court is of the opinion that the testimony of George Boylan exceeded the limitations prescribed by the Court with respect to new matter which had not been alleged in the pleadings; and the Court is of the opinion that the motion for a new trial on defendant's third Counterclaim should be allowed." We find the trial court's order granting a new trial to be the product of an abuse of discretion.

First, the basis for the trial court's order was not grounded on reasons advanced by defendant for making the motion. Rather, it appears to be structured independently on what the trial judge perceived to be error. Furthermore, an examination of the reasons articulated for the new trial reveals the trial court's order was an abuse of discretion. At trial, the defendant objected to Boylan's rebuttal testimony, contending Boylan was not listed on the pretrial

PERRY-GRIFFIN FOUNDATION v. PROCTOR

[107 N.C. App. 528 (1992)]

order as one of the witnesses to be called by plaintiff. Nevertheless, the trial court permitted Boylan to testify, noting:

> The Court will further allow an opinion from Mr. Boylan if he is so qualified with respect to the efforts put forth by the foundation on the appeal from Judge Reid's Order to the Court of Appeals. The Court will not entertain or allow an opinion as to whether the Foundation was or was not diligent in its efforts in supporting the sale overall or the contract overall or whether the Foundation or the plaintiff was or did or did not act in good faith overall.

> [T]he Court is going to allow this because Mr. Boylan has been a participate [sic] in this cy pray [sic] action as represented of the Attorney General throughout the course of the previous cy pray [sic] action.

Boylan's testimony which is the source of contention reads:

> A. My opinion is that the Foundation did not breech [sic] its duty to exercise its best efforts? [sic]

> [I]t was my opinion initially that it was simply a real impossibility for the Foundation to ever get Court Approval. Ms. Perry had left her property in Trust wit [sic] a specific request that no real estate was to be sold or whether it could be leased and timber harvested. The law in North Carolina is and has been for some time that those types of restraints and alienation are legal. Therefore, in my opinion it was impossible for the Foundation to get Court approval for the sell [sic] of property, because it would be in violation in the then current law of North Carolina that would up hold [sic] such type of restraints.

We do not find the above testimony included "new matters" outside the scope of limitation set by the trial judge for Boylan's testimony. Even assuming *arguendo* the testimony ventured outside the boundaries set by the trial judge, we do not find the testimony constituted error which would justify a new trial. Defendant's witness testified about the law, and the *cy pres* action, and Boylan's testimony served only to rebut a matter already before the jury. The trial judge's order granting defendant a new trial on defendant's counterclaim is therefore reversed.

KEEL v. H & V INC.

[107 N.C. App. 536 (1992)]

The cause is thus remanded for the entry of an order granting plaintiff's motion to double the timber damages before the defendant's credits are deducted from the damages.

Reversed and remanded.

Judges JOHNSON and GREENE concur.