2006 VT 46

### State of Vermont v. Barrett M. Singer

[904 A.2d 1184]

No. 04-371

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed June 30, 2006

*William H. Sorrell*, Attorney General, and *Michael O. Duane*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee/Cross-Appellant.

*Robert F. O'Neill* and *Andrew R. Strauss* of *Gravel and Shea*, Burlington, for Defendant-Appellant/Cross-Appellee.

¶ 1. **Skoglund, J.** This case concerns the calculation of a damage award flowing from a jury verdict finding defendant liable for the unauthorized cutting of trees under Vermont's timber trespass statute, 13 V.S.A. § 3606. On appeal, defendant challenges the jury's award of punitive damages, and the State cross-appeals to challenge the court's jury instructions on how to calculate damages under § 3606. We reject

the trial court's method of calculating damages under § 3606 and, as a result, hold that the State should have received treble damages under that statute. We also hold that punitive damages are unavailable in tandem with multiple damages under § 3606. Accordingly, we remand for entry of judgment in the State's favor.

¶ 2. Defendant owns a parcel of land in Hyde Park, Vermont, abutting the Green River Reservoir State Park, which is owned by the State. In April and May 1999, defendant sought a variance from the Town of Hyde Park so that he could build a boathouse closer to the reservoir. In May 1999, the State's Department of Forests, Parks and Recreation denied defendant permission to construct an access from his property across state park land to the water, and the Town denied his request for a variance.

¶ 3. After both denials, defendant completed extensive work on his property that spilled over onto state park land. Specifically, he cut down ninety-eight trees on a swath of state park land between his property and the reservoir and bulldozed a road to the water across the cleared land. On June 21, 1999, the State commenced an action seeking injunctive relief, damages, punitive damages, and other penalties. On June 23, 1999, pursuant to the parties' stipulation, the Washington Superior Court entered an order requiring defendant to immediately cease all construction, install immediate erosion control measures, hire a consultant to develop a plan to remediate the damage to the state park land, and implement the remediation plan. Defendant carried out the remediation plan, although the State twice had to move for contempt, with the court issuing amended orders of injunctive relief in response.[1]

¶ 4. In May 2001, this matter went to trial before a jury on the issue of damages. The State sought treble damages under Vermont's timber trespass statute, which provides that when a person cuts down, destroys, or removes trees or timber without the owner's permission, "the party injured may recover of such person treble damages in an action on this statute." 13 V.S.A. § 3606. If the defendant proves that he "acted through mistake, or had good reason to believe that the trees, timber, wood, or underwood belonged to him, or that he had a legal

---

[1] In 2000, the State brought criminal charges against defendant. He pled no contest to reduced charges and was convicted of a misdemeanor.

right to perform the acts complained of," then the injured party can recover only single damages. *Id.*

¶ 5. The jury returned its verdict via a special verdict form supplied by the trial court.[2] The jury answered that the "actual value of trees lost by the State" and the "value of replacement trees planted by [defendant]" both equaled $54,000 and found that the cutting of the trees was not an "honest mistake." In formulating the damage award, the jury was instructed to calculate its answer as follows: "If the answer to Question 2 is 'no,' then your answer to Question 4 will be three times (Response Number 1 minus Response Number 3). Put differently, first do the subtraction, if any, then the multiplication, if any." The jury filled in a figure of $0, because 54,000 subtracted from 54,000 is zero, and zero multiplied by three is zero. Finally, Question 5 asked the jury to decide punitive damages, noting that "[w]hether to make a punitive award, and its amount, is a matter for the jury's discretion." The jury filled in $62,500 as the punitive damages award.

¶ 6. Defendant argues on appeal that: the jury could not award punitive damages once it decided that the State's actual damages were $0; the statutory trebling of damages is a punitive measure which, if

---

[2] The special verdict form, as completed by the jury, contained the following questions, answers, and instructions:

1. The actual value of trees lost by the State, on its lands, as a result of their being cut down by Mr. Singer is

    $____54,000_____.

2. Has defendant persuaded you that his cutting down of State trees was an "honest mistake?"

    Yes ___ No _X_

3. The value of the replacement trees planted by Mr. Singer is

    $____54,000_____.

4. The awarded damages to the State are

    $____0_____.

    (The answer to Question 4 is your response to Number 1, minus your response to Number 3, if the answer to Question 2 is "yes." If the answer to Question 2 is "no," then your answer to Question 4 will be three times (Response Number 1 minus Response Number 3). Put differently, first do the subtraction, if any, then the multiplication, if any.)

5. For punitive damages, the jury awards to the State the sum of

    $____62,500_____.

    (Whether to make a punitive award, and its amount, is a matter for the jury's discretion.)

utilized, precludes an accompanying award of punitive damages; and injunctive relief cannot support a punitive damages award. The State responds that punitive damages may be awarded regardless of whether it won a net verdict, as long as the jury concluded that defendant was liable to the State for some quantum of harm. Thus, the State reasons, the $54,000 value the jury placed on the cut trees was sufficient to support punitive damages, even assuming defendant was entitled to a $54,000 offset for the remediation work. The State argues in its brief that punitive damages are available along with treble damages, but at oral argument its counsel indicated that, if faced with the choice of accepting treble damages less the value of the planted trees or a retrial on the issue of punitive damages, the State would forego the punitive damages.

¶ 7. In its cross-appeal, the State argues that the trial court should have instructed the jury to treble the value of the trees cut before deducting the value of the replacement trees. The State pointed to decisions from other jurisdictions interpreting timber trespass statutes that uniformly apply the statutory multiplier to the plaintiffs' damages before deducting the value of any remedial work or other mitigation by the defendants. The State also cited cases addressing RICO and the Clayton Act for the proposition that any offset should be subtracted after applying the statutory multiplier. The State contends that such a rule serves the purposes behind cumulative damages statutes like 13 V.S.A. § 3606 — compensating injured parties for their loss, plus the time and inconvenience devoted to remedying it, and encouraging compliance with the law. Thus, the State concludes, the trial court undermined the statute by essentially trebling the value of defendant's reparation efforts, instead of trebling the value of the damage he caused.

¶ 8. In section I, we hold that the court incorrectly instructed the jury to subtract the value of the replacement trees from the value of the cut trees and then treble the result. We agree with the majority of other jurisdictions dealing with similar timber trespass statutes, as well as the weight of authority concerning other multiple-damages statutes like RICO and the Clayton Act, and hold that the court should have instructed the jury to treble the value of the cut trees before subtracting the value of the replacement trees. In section II, we hold that the State cannot recover punitive damages along with treble damages under the timber trespass statute, again joining the majority of courts

that have addressed the availability of punitive damages in addition to multiple damages under similar timber trespass statutes.

I.

¶ 9. The State's challenge to the trial court's method of computing damages under 13 V.S.A. § 3606, as reflected in the instructions accompanying Question 4 of the verdict form, presents an issue of first impression: Does the statutory multiplier apply before or after the value of defendant's remediation work is subtracted from the value of the trees cut? This is a question of law which we review de novo. See *United States v. Firchau*, 380 P.2d 800, 805 (Or. 1963) (characterizing question of whether to deduct mitigation before or after applying multiplier in Oregon's timber trespass statute as one of law); *Tydrich v. Bomkamp*, 558 N.W.2d 692, 694 (Wis. Ct. App. 1996) (reviewing de novo trial court's computation of damages under Wisconsin's timber trespass statute). A party challenging a jury instruction on appeal must show that the instruction was erroneous and prejudicial. *Greene v. Bell*, 171 Vt. 280, 286, 762 A.2d 865, 871 (2000). As explained below, the purposes of § 3606 are best served by applying the multiplier before deducting the value of any remediation undertaken after the illegal cutting. Thus, the trial court's instruction was error and prejudiced the State by improperly reducing its recovery under § 3606.

¶ 10. In deciding how to apply the statute's multiple-damages provision, "our principal objective is to implement [the] legislative intent" behind the statute. *In re Hinsdale Farm*, 2004 VT 72, ¶ 5, 177 Vt. 115, 858 A.2d 249. Because the statute is silent concerning the computation of damages, "we must consider the entire statute, including its subject matter, effects and consequences." *Id.* This Court has long recognized that compensation of the wronged party is a primary purpose of Vermont's timber trespass statute and that the right to recover multiple damages serves that purpose. *Guild v. Prentis*, 83 Vt. 212, 217, 74 A. 1115, 1118 (1910). The treble-damages provision signals the Legislature's recognition that, in the context of a claim for unlawful cutting of trees, full compensation may require more than repayment for the value of the trees cut. For example, a landowner's damages may include, beyond the cut trees themselves, costs associated with erosion, pollution, and "numerous other injuries to the land." *Ventoza v. Anderson*, 545 P.2d 1219, 1228 (Wash. Ct. App. 1976). Additionally, as this Court has recognized, the comfort and aesthetic value provided by "trees that have no direct commercial value" can also serve as a

legitimate element of damages in cases involving the destruction of trees. *O'Brien v. Dewey*, 120 Vt. 340, 349-50, 143 A.2d 130, 135 (1958).

¶ 11. The treble-damages provision also serves as a deterrent, placing "tree cutters on notice that they cut beyond their boundaries at their peril." *Firchau*, 380 P.2d at 805; accord *King v. Grecco*, 111 S.W.3d 877, 881 & n.2 (Ky. Ct. App. 2003) (characterizing "'tree pirates'" and "arboreal rustlers" as "a scourge condemned from the bayou to the last frontier" (quoting *Jordan v. Stevens Forestry Servs., Inc.*, 430 So. 2d 806, 809 (La. Ct. App. 1983))). This punitive aspect of the timber trespass statute serves to deter intentional trespass and the wrongful taking of another's timber. *Ventoza*, 545 P.2d at 1227. Thus, our decision concerning the correct application of the statutory multiplier must serve § 3606's purposes of providing full compensation for landowners whose trees are taken or destroyed by another and discouraging the unauthorized cutting or damaging of trees.

¶ 12. Like the other courts that have addressed this issue under similar statutes, we hold that the aims of § 3606 are best served by applying the statutory multiplier before deducting the value of any mitigation or remediation by defendant or any recovery by plaintiff. See *United States v. Hult*, 319 F.2d 47, 48 (9th Cir. 1963) (holding that the possibility that plaintiff could have salvaged enough of the cut timber to offset the stumpage value of the cut timber could be considered as potential mitigation only after plaintiff's damages had been doubled); *Perry-Griffin Found. v. Proctor*, 421 S.E.2d 186, 189 (N.C. Ct. App. 1992) (doubling value of cut timber under North Carolina timber trespass statute before subtracting agreed-upon credit for monies recovered by plaintiff); *Firchau*, 380 P.2d at 805 (applying statutory multiplier before making allowance for "such sums in mitigation as may be appropriate in a given case"); *Tydrich*, 558 N.W.2d at 696 (affirming trial court's computation of damages by which it doubled value of cut trees under Wisconsin statute before applying offset for plaintiff's net proceeds from sale of cut timber). As illustrated in *Firchau*, if we adopted the trial court's method, a defendant could defeat the statute's purposes by leaving enough cut trees behind so that the landowner could sell them for a sum equal to the value of the trees cut. 380 P.2d at 805. Put another way, if we permitted the deduction of mitigation or remediation prior to trebling the value of the cut trees, a defendant could simply write "the victim of the trespass a check for the value of the timber removed ... [plus] other incidental losses, and thereby wash out his liability altogether." *Id.* We will not interpret

§ 3606 so that "the owner who suffered the involuntary harvest of his timber would have to bear it in silence." *Id.*

¶ 13. Ultimately, § 3606 recognizes that when a defendant cuts down another's trees without authorization, he deprives the trees' owner of not only the right to use and enjoy those particular trees as the owner sees fit, but also the monetary value of the cut trees. Thus, defendant's contention to the contrary notwithstanding, this case does implicate a landowner's right to use his land, and the trees growing there, as he sees fit. Accepting the trial court's method of computing damages under § 3606, however, would "force compensation upon [an owner] when undamaged, growing trees were what he would have possessed but for the willful intrusion of the trespasser." *Ventoza*, 545 P.2d at 1227. Such an interpretation would fail to promote § 3606's goal of protecting the owner's right to use or preserve his trees as he desires.

■ ¶ 14. Finally, the fact that § 3606 provides for treble damages regardless of whether a person cuts down and carries away the trees of another or simply cuts them down and leaves them further supports our conclusion. The statute applies the same remedy under either scenario, even though "[t]he net result to the landowner may be substantially different" depending on which course the wrongdoer takes. *Ventoza*, 545 P.2d at 1228. Under the trial court's and defendant's reading of § 3606, however, recovery would depend on the defendant's decision to remove the cut trees or not — if the defendant left some trees, the plaintiff would be permitted to treble the value of only the cut trees in excess of whatever value could be realized by salvaging the timber left behind. If the salvage value happened to equal or exceed the value determined by the trier of fact for the cut trees, the plaintiff's recovery under § 3606 would be zero. The Legislature could not have intended a plaintiff's recovery under § 3606 to depend on a defendant's decision to remove or leave behind unlawfully cut trees, and such a result would fly in the face of the statute's dual purposes — compensation and deterrence. Accordingly, we reject the trial court's method of computing damages under § 3606 and hold that, when the statute's trebling provision applies, a plaintiff's total damages are computed by determining the value of the trees cut, trebling that figure, and then making any appropriate allowances for remediation or mitigation.[3]

---

[3] In light of our holding on this issue, we need not engage defendant's arguments concerning the definition of "actual damages" and the propriety of awarding punitive damages to a party to whom the jury has not awarded net money damages. See

Therefore, the State is entitled to statutory damages of $108,000 — the value of the cut trees ($54,000) multiplied by three, less the value of the replacement trees ($54,000).

## II.

¶ 15. The State cannot, however, recover both multiple damages under § 3606 and punitive damages for the destruction of the trees.[4] As explained above, § 3606's treble-damages provision serves, in part, to deter tree piracy by punishing one who unlawfully cut another's trees. Given this punitive component of § 3606, awarding the State both treble damages and punitive damages here would amount to an improper double recovery, because the State would then recover twice for the same injury — the wrongful cutting of its trees. See *Will v. Mill Condo. Owners' Ass'n*, 2006 VT 36, ¶ 7, 179 Vt. 500, 898 A.2d 1264 (noting that generally a plaintiff cannot recover twice for the same injury).

¶ 16. Further, courts in other jurisdictions that have considered the propriety of punitive damages in addition to multiple-damage awards under timber trespass statutes have consistently reached the same conclusion. For example, in *Baker v. Ramirez*, the court held that, under California's timber trespass statute, allowing both punitive and statutory multiple damages "would amount to punishing the defendant twice" and would not advance the statute's policy of "educating blunderers (persons who mistake location of boundary lines) and discouraging rogues (persons who ignore boundary lines)." 235 Cal. Rptr. 857, 866 (Ct. App. 1987); see also *Stoner v. Houston*, 582 S.W.2d 28, 30-31 (Ark. 1979) (reversing where plaintiffs recovered both treble damages under Arkansas timber trespass statute and punitive damages in connection with trespass); *Marsella v. Shaffer*, 754 N.E.2d 411, 419 (Ill. App. Ct. 2001) ("[T]he recovery of both punitive and treble damages under the [Illinois Wrongful Tree Cutting] Act would amount

---

*McCormick v. McCormick*, 159 Vt. 472, 479, 621 A.2d 238, 241 (1993) ("Punitive or exemplary damages presuppose the existence of actual damages.").

[4] The State argues that defendant waived his ability to challenge the punitive damages by failing to timely object to the relevant jury instructions or the verdict form. The question of the availability of punitive damages in addition to a treble damage award under § 3606, however, flows naturally from the analysis above. Thus, regardless of the outcome of the State's waiver argument, we can and do decide the punitive damages issue.

to an impermissible double recovery ... because both awards were based on the same injury."); *Johnson v. Tyler*, 277 N.W.2d 617, 618-19 (Iowa 1979) (affirming grant of new trial because plaintiff improperly recovered both treble damages under Iowa timber trespass statute and punitive damages); *King*, 111 S.W.3d at 882 (holding that punitive damages may not be awarded along with treble damages under timber trespass statute); *Johnson v. Jensen*, 446 N.W.2d 664, 666 (Minn. 1989) (holding that plaintiffs could not recover both treble damages under timber trespass statute and punitive damages).[5] Accordingly, we reverse and remand for entry of judgment in the State's favor in the amount of $108,000 — the value of the cut trees multiplied by three, less the value of the replacement trees, and excluding the jury's award of punitive damages.

*Reversed and remanded for further proceedings consistent with this decision.*

---

[5] We note that one court has allowed punitive damages to stand alongside treble damages awarded under a timber trespass statute similar to § 3606. *Bullman v. D & R Lumber Co.*, 464 S.E.2d 771, 777 (W. Va. 1995). That decision rested on the court's conclusion that the treble damage award authorized by the statute "has nothing to do with punishing the wrongdoer." *Id.* We decline to adopt that view with respect to § 3606.