2007 VT 44

### John Stanley v. George Stanley

[928 A.2d 1194]

No. 05-499

Present: **Reiber, C.J., Dooley, Johnson and Skoglund, JJ., and Allen, C.J. (Ret.), Specially Assigned**

Opinion Filed May 25, 2007

528

*Steven A. Adler* of *Axelrod & Adler, PLLC*, St. Johnsbury, for Plaintiff-Appellant.

*Jay Abramson*, St. Johnsbury, for Defendant-Appellee.

¶ 1. **Skoglund, J.** In this action against his brother and tenant-in-common, John Stanley appeals from the Essex County Superior Court's decision on the measure of damages for the removal of trees, the denial of his request for treble damages under 13 V.S.A. § 3606, and the denial of attorney's fees. The trial court held that John Stanley, the plaintiff, is entitled to half of the fair market value of the timber harvested and delivered to the mills, measured by the prevailing published market prices for the wood reported sold. The court also found that the timber trespass statute, 13 V.S.A. § 3606, does not apply to suits between tenants-in-common for the sale of the common property, and that John is not entitled to recover attorney's fees. We affirm.

¶ 2. The following facts are undisputed. In 1957, brothers John and George Stanley bought a perpetual lease of a 100 acre woodlot in Victory, Vermont. Defendant, George Stanley, paid the entire purchase price. They were record owners, as tenants-in-common, at all times relevant to the case. From the beginning of their ownership, defendant paid the annual rent as well as property taxes when they were assessed. In 1965, defendant received money from Portland Pipe Company for the right to lay pipe across the property. In the spring of 2002, defendant hired a logging contractor to harvest and sell the trees from the lot. The logging operation commenced in June 2002 and was completed in August 2002. Defendant did not discuss the logging operation with plaintiff until after it was completed, believing that, "since he had been paying all the expenses relating to the property, he should be able to make the decisions relating to the land." Defendant received $45,803.32 for the timber removed from the lot.

¶ 3. In the summer of 2002, when plaintiff learned that the lot was being harvested, he visited the lot, took pictures of the operation, and attempted to reach his brother at his house on two occasions. Defendant was not home on either occasion, and plaintiff did not leave a note.

Defendant does not have a phone. While the logging operation was underway, plaintiff took no action to have it stopped, preferring, in his words, to "wait and see what would happen." In October 2002, at least a month after the cutting was completed, plaintiff retained counsel and filed a complaint in Essex County Superior Court. The complaint requested an accounting, partition, treble damages under 13 V.S.A. § 3606, costs of the action and attorney's fees. Plaintiff also sent a letter to defendant requesting an accounting of the timber cut. Defendant's attorney replied to the letter with a summary of all timber cut, the mills to which it was delivered, and the amounts received, but provided no supporting documentation or payment to plaintiff for his share of the timber.

¶ 4. The Essex Superior Court held a bench trial on May 16 and 17, 2005. Plaintiff presented testimony from three experts on the value of the timber cut. First, Thomas Hahn, a private consulting forester, presented two different methods of determining the value of the timber cut from the property. Hahn offered testimony as to the prevailing market price of a unit of wood in the summer of 2002 based on trade publications. Hahn used these prices, along with the quality and quantity figures from a summary of mill slips and trip tickets provided by the logging contractor to determine that the fair market value of the timber sold was $61,785.79. Hahn also offered testimony on the "timber cruising" or "sampling" method that would support a finding that the fair market value of the timber was $82,000. This method involves estimating the boundaries of the lot in question and sampling plots of wood from both the cut lot and from the adjoining uncut lot. Expert testimony on the value of the timber cut was also taken from Stanley Robinson based on his review of the logging contractor's summary of mill slips and trip tickets, and from Alan Bouthelier based on his visit to the property prior to the logging. The testimony of these two experts supported a finding that the fair market value of the timber cut was approximately $80,000.

¶ 5. The trial court did not rely on the "sampling" method, dismissing it as too speculative. Nor did it rely on the higher estimates provided by Hahn, Robinson and Bouthelier as to the value of the timber cut. The court ultimately relied on Hahn's testimony based on published market prices in combination with the summary of mill slips and trip tickets to find that the price the logging contractor paid defendant was less than the fair market value of the timber. The trial court found that the fair market value of the timber cut was $61,785.79, and that plaintiff was entitled to half of this amount. It also ruled that 13 V.S.A. § 3606 does

not apply to actions between tenants-in-common for the sale of common property. The court further found that plaintiff was not entitled to attorney's fees, and granted the request for partition. Following the hearing, defendant paid plaintiff $22,901.66, half of what he received for the timber.

¶ 6. Plaintiff makes two claims of error. First, he argues that the trial court erred in finding that he was not entitled to treble damages under 13 V.S.A. § 3606 and therefore legal fees under 13 V.S.A. § 3701. Second, he argues that the trial court erred in finding that the "timber cruising" or "sampling" method of determining the quality and quantity of the wood removed from the lot was too speculative.* We address each of these in turn.

## I.

¶ 7. Simply put, this case requires us to decide whether a tenant-in-common can trespass on land in which he owns an undivided interest for purposes of 13 V.S.A. § 3606. We hold he cannot. Vermont's timber trespass statute, 13 V.S.A. § 3606, reads in relevant part:

> If a person cuts down, destroys or carries away any tree or trees placed or growing for any use or purpose whatsoever ... belonging to another person, without leave from the owner ... the party injured may recover of such person treble damages in an action on this statute. However, if it appears on trial that the defendant acted through mistake, or had good reason to believe that the trees ... belonged to him, or that he had a legal right to perform the acts complained of, the plaintiff shall recover single damages only, with costs.

13 V.S.A. § 3606.

¶ 8. In interpreting a statute, our goal is to implement the Legislature's intent. *Miller-Jenkins v. Miller-Jenkins*, 2006 VT 78, ¶ 34, 180 Vt. 441, 912 A.2d 951. Our first step in pursuit of this goal is to apply the plain meaning of the statute, so long as it is unambiguous. *Id.* If the intent of the Legislature is unclear, we look at the entire statute, "'including its subject matter, effects and consequences, as well as the reason for and spirit of the law.'" *Id.* (quoting and citing *In re Hinsdale Farm*, 2004 VT 72, ¶ 5, 177 Vt. 115, 858 A.2d 249).

---

* Plaintiff does not appeal the trial court's finding as to the fair market value of a unit of wood in the summer of 2002.

¶ 9. The plain language indicates that the statute should not apply in this case. First, the statute punishes one who cuts trees "belonging to another person, without leave from the owner." 13 V.S.A. § 3606. The language presupposes that the injured party has ownership rights to the exclusion of the party from whom treble damages are being sought. See *State v. Singer*, 2006 VT 46, ¶ 14, 180 Vt. 104, 904 A.2d 1184 (affirming treble damages where the plaintiff's exclusive ownership of the timber was not contested); *Pion v. Bean*, 2003 VT 79, ¶ 29, 176 Vt. 1, 833 A.2d 1248 (affirming the trial court's application of § 3606 after finding that the plaintiffs cut trees that they had no reason to believe belonged to them and that were found to be on the defendant's property); *Lavalette v. Noyes*, 124 Vt. 353, 357, 205 A.2d 413, 416 (1964) (affirming treble damages where the plaintiff's exclusive ownership of timber was not contested on appeal); *Amey v. Hall*, 123 Vt. 62, 69, 181 A.2d 69, 74 (1962) (affirming treble damages for trees cut beyond the defendant's proposed property line). Since defendant had an undivided ownership interest in the trees at the time of the logging, the treble damages statute simply does not apply.

¶ 10. The punitive aspect of the timber trespass statute serves to deter intentional trespass and the wrongful taking of another's timber. *Singer*, 2006 VT 46, ¶ 11. It is inapplicable in this case as defendant is not a trespasser. See *Masters v. Stone*, 134 Vt. 529, 532, 367 A.2d 686, 688 (1976) (holding that 13 V.S.A. § 3606 only applies to trespassers). He owns the land and trees in question as a tenant-in-common. A tenant-in-common cannot bring an action for trespass against another tenant-in-common for cutting and selling trees which grew on the common property. We decided this principle in *Booth v. Adams*, 11 Vt. 156, 160 (1839), where we held that "one tenant in common of land cannot maintain trespass against his co-tenant, unless he is expelled from the common estate or deprived of the common enjoyment," and that "any act of the co-tenant, which might be referred to as his right, as gathering in crops, cutting trees fit to cut, or removing fences . . . is not the ground of such action, even on the part of him who sowed the crop or erected the fence." Likewise in *Wait v. Richardson*, 33 Vt. 190, 194 (1860), we held, "[t]he mere entry upon the common land by one of the tenants, and cutting and carrying off the timber therefrom, is no where treated as giving to the other tenant the right to maintain an action of trespass of any kind."

¶ 11. Plaintiff relies on *Guild v. Prentis*, 83 Vt. 212, 74 A. 1115 (1910), for the proposition that the timber trespass statute is applicable even where there is no trespass. Plaintiff, however, misreads *Guild*. That

case was brought by lessors under the timber trespass statute against the defendants who cut trees that afforded shade for lessors' summer cottage. *Id.* at 213, 74 A. at 1116. This Court held that the owners of the land, who had conveyed the fee of the same land to another reserving to themselves the right to cut and remove the trees on the land, could give no leave to cut the trees during the ten-year tenancy and that the timber trespass statute applied so as to award treble damages to the injured lessors. *Id.* at 214, 218, 74 A. at 1116, 1118. Whereas the plaintiffs in *Guild v. Prentis*, as lessees, did have the right to exclude owners in fee during the term of the lease, here, plaintiff can demonstrate no similar right.

¶ 12. This conclusion comports with the goal of the statute to deter intentional trespass and the wrongful taking of another's timber. *Singer*, 2006 VT 46, ¶ 11. Defendant, as co-owner of the trees, is not among the intended targets of the statute, those "'tree pirates'" and "'arboreal rustlers'" who trespass on another's property and remove timber to which they have no right. *Id.* (quoting *King v. Grecco*, 111 S.W.3d 877, 881 & n.2 (Ky. Ct. App. 2003)). Nor would treble damages deter one who "had good reason to believe that the trees . . . belonged to him." 13 V.S.A. § 3606. Considering the plain language and purpose of this statute, we find no error in the trial court's denial of treble damages under 13 V.S.A. § 3606. Therefore, plaintiff was not entitled to attorney's fees under 13 V.S.A. § 3701.

II.

¶ 13. Plaintiff next asserts that the trial court erred when it held that the "timber cruising" or "sampling" method of determining the quality and quantity, and therefore the value, of the timber was too speculative. "We review the court's findings of fact for clear error." *Guibord v. Scholtz*, 2006 VT 22, ¶ 4, 179 Vt. 623, 895 A.2d 202 (mem.); V.R.C.P. 52(a)(2). "A finding will not be disturbed merely because it is contradicted by substantial evidence; rather, an appellant must show there is no credible evidence to support the finding." *Highgate Assocs. v. Merryfield*, 157 Vt. 313, 315, 597 A.2d 1280, 1281 (1991). "Findings of fact will be set aside only when they are clearly erroneous, with due regard given to the opportunity of the trial court to judge the credibility of the witnesses and the weight of the evidence." *P.F. Jurgs & Co. v. O'Brien*, 160 Vt. 294, 300, 629 A.2d 325, 329 (1993).

¶ 14. At trial, three experts presented evidence on the value of the timber cut and sold. The trial court heard testimony from plaintiff's experts Thomas Hahn, Stanley Robinson and Alan Bouthelier that

would have supported a finding that the fair market value of the timber removed from the property was approximately $80,000. Hahn's testimony supporting this figure was based on his use of the "timber cruising" or "sampling" method. The trial court also heard similar value estimates from Robinson based on a review of the mill slip and trip ticket summary and from Bouthelier based on his visit to the property prior to the logging. Hahn, however, also provided testimony that the fair market value of the timber cut and sold was $61,785.79. He based this figure on the prevailing published market price of a quantity of wood in the summer of 2002 and on the quality and quantity figures of the timber that was reported sold in the summary of mill slips and trip tickets. The trial court, after evaluating the different methods, relied on this testimony to determine the fair market value of the timber cut and sold. Since the trial court based its finding on adequate evidence, its decision not to use the alternative calculations was proper.

¶ 15. Plaintiff is due an accounting for his share of the fair market value of the timber cut and sold. The trial court properly found that he is due one half of $61,785.79, and that the timber trespass statute does not apply in this case. Accordingly, we affirm.

*Affirmed.*