Stanley v. Stanley (2005-499)

2007 VT 44

[Filed 25-May-2007]

 NOTICE: This opinion is subject to motions for reargument under
 V.R.A.P. 40 as well as formal revision before publication in the Vermont
 Reports. Readers are requested to notify the Reporter of Decisions,
 Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801 of
 any errors in order that corrections may be made before this opinion goes
 to press.


 2007 VT 44

 No. 2005-499


 John Stanley Supreme Court

 On Appeal from
 v. Essex Superior Court


 George Stanley January Term, 2007


 Brian J. Grearson, J.

 Steven A. Adler of Axelrod & Adler, PLLC, St. Johnsbury, for
 Plaintiff-Appellant.

 Jay Abramson, St. Johnsbury, for Defendant-Appellee.


 PRESENT: Reiber, C.J., Dooley, Johnson and Skoglund, JJ., and 
 Allen, C.J. (Ret.), Specially Assigned

 ¶ 1. SKOGLUND, J. In this action against his brother and
 tenant-in-common, John Stanley appeals from the Essex County Superior
 Court's decision on the measure of damages for the removal of trees, the
 denial of his request for treble damages under 13 V.S.A. § 3606, and the
 denial of attorney's fees. The trial court held that John Stanley, the
 plaintiff, is entitled to half of the fair market value of the timber
 harvested and delivered to the mills, measured by the prevailing published
 market prices for the wood reported sold. The court also found that the
 timber trespass statute, 13 V.S.A. § 3606, does not apply to suits between
 tenants-in-common for the sale of the common property, and that John is not
 entitled to recover attorney's fees. We affirm.

 ¶ 2. The following facts are undisputed. In 1957, brothers John and
 George Stanley bought a perpetual lease of a 100 acre woodlot in Victory,
 Vermont. Defendant, George Stanley, paid the entire purchase price. They
 were record owners, as tenants-in-common, at all times relevant to the
 case. From the beginning of their ownership, defendant paid the annual
 rent as well as property taxes when they were assessed. In 1965, defendant
 received money from Portland Pipe Company for the right to lay pipe across
 the property. In the spring of 2002, defendant hired a logging contractor
 to harvest and sell the trees from the lot. The logging operation
 commenced in June 2002 and was completed in August 2002. Defendant did not
 discuss the logging operation with plaintiff until after it was completed,
 believing that, "since he had been paying all the expenses relating to the
 property, he should be able to make the decisions relating to the land." 
 Defendant received $45,803.32 for the timber removed from the lot. 

 ¶ 3. In the summer of 2002, when plaintiff learned that the lot was
 being harvested, he visited the lot, took pictures of the operation, and
 attempted to reach his brother at his house on two occasions. Defendant
 was not home on either occasion, and plaintiff did not leave a note. 
 Defendant does not have a phone. While the logging operation was underway,
 plaintiff took no action to have it stopped, preferring, in his words, to
 "wait and see what would happen." In October 2002, at least a month after
 the cutting was completed, plaintiff retained counsel and filed a complaint
 in Essex County Superior Court. The complaint requested an accounting,
 partition, treble damages under 13 V.S.A § 3606, costs of the action and
 attorney's fees. Plaintiff also sent a letter to defendant requesting an
 accounting of the timber cut. Defendant's attorney replied to the letter
 with a summary of all timber cut, the mills to which it was delivered, and
 the amounts received, but provided no supporting documentation or payment
 to plaintiff for his share of the timber. 

 ¶ 4. The Essex Superior Court held a bench trial on May 16 and 17,
 2005. Plaintiff presented testimony from three experts on the value of the
 timber cut. First, Thomas Hahn, a private consulting forester, presented
 two different methods of determining the value of the timber cut from the
 property. Hahn offered testimony as to the prevailing market price of a
 unit of wood in the summer of 2002 based on trade publications. Hahn used
 these prices, along with the quality and quantity figures from a summary of
 mill slips and trip tickets provided by the logging contractor to determine
 that the fair market value of the timber sold was $61,785.79. Hahn also
 offered testimony on the "timber cruising" or "sampling" method that would
 support a finding that the fair market value of the timber was $82,000. 
 This method involves estimating the boundaries of the lot in question and
 sampling plots of wood from both the cut lot and from the adjoining uncut
 lot. Expert testimony on the value of the timber cut was also taken from
 Stanley Robinson based on his review of the logging contractor's summary of
 mill slips and trip tickets, and from Alan Bouthelier based on his visit to
 the property prior to the logging. The testimony of these two experts
 supported a finding that the fair market value of the timber cut was
 approximately $80,000. 

 ¶ 5. The trial court did not rely on the "sampling" method,
 dismissing it as too speculative. Nor did it rely on the higher estimates
 provided by Hahn, Robinson and Bouthelier as to the value of the timber
 cut. The court ultimately relied on Hahn's testimony based on published
 market prices in combination with the summary of mill slips and trip
 tickets to find that the price the logging contractor paid defendant was
 less than the fair market value of the timber. The trial court found that
 the fair market value of the timber cut was $61,785.79, and that plaintiff
 was entitled to half of this amount. It also ruled that 13 V.S.A § 3606
 does not apply to actions between tenants-in-common for the sale of common
 property. The court further found that plaintiff was not entitled to
 attorney's fees, and granted the request for partition. Following the
 hearing, defendant paid plaintiff $22,901.66, half of what he received for
 the timber. 

 ¶ 6. Plaintiff makes two claims of error. First, he argues that
 the trial court erred in finding that he was not entitled to treble damages
 under 13 V.S.A. § 3606 and therefore legal fees under 13 V.S.A. § 3701. 
 Second, he argues that the trial court erred in finding that the "timber
 cruising" or "sampling" method of determining the quality and quantity of
 the wood removed from the lot was too speculative. (FN1) We address each of
 these in turn.

 I.

 ¶ 7. Simply put, this case requires us to decide whether a
 tenant-in-common can trespass on land in which he owns an undivided
 interest for purposes of 13 V.S.A. § 3606. We hold he cannot. Vermont's
 timber trespass statute, 13 V.S.A. § 3606, reads in relevant part:

 If a person cuts down, destroys or carries away any tree or trees
 placed or growing for any use or purpose whatsoever . . .
 belonging to another person, without leave from the owner . . .
 the party injured may recover of such person treble damages in an
 action on this statute. However, if it appears on trial that the
 defendant acted through mistake, or had good reason to believe
 that the trees . . . belonged to him, or that he had a legal right
 to perform the acts complained of, the plaintiff shall recover
 single damages only, with costs.

 13 V.S.A. § 3606.

 ¶ 8. In interpreting a statute, our goal is to implement the
 Legislature's intent. Miller Jenkins v. Miller Jenkins, 2006 VT 78, ¶ 34,
 __ Vt. __, 912 A.2d 951. Our first step in pursuit of this goal is to
 apply the plain meaning of the statute, so long as it is unambiguous. Id. 
 If the intent of the Legislature is unclear, we look at the entire statute,
 " 'including its subject matter, effects and consequences, as well as the
 reason for and spirit of the law.' " Id. (quoting and citing In re Hinsdale
 Farm, 2004 VT 72, ¶ 5, 177 Vt. 115, 858 A.2d 249).

 ¶ 9. The plain language indicates that the statute should not apply
 in this case. First, the statute punishes one who cuts trees "belonging to
 another person, without leave of the owner." 13 V.S.A. § 3606. The 
 language presupposes that the injured party has ownership rights to the
 exclusion of the party from whom treble damages are being sought. See
 State v. Singer, 2006 VT 46, ¶ 14, __ Vt. __, 904 A.2d 1184, (affirming
 treble damages where the plaintiff's exclusive ownership of the timber was
 not contested); Pion v. Bean, 2003 VT 79, ¶ 29, 176 Vt. 1, 833 A.2d 1248
 (affirming the trial court's application of § 3606 after finding that the
 plaintiffs cut trees that they had no reason to believe belonged to them
 and that were found to be on the defendant's property); Lavalette v. Noyes,
 124 Vt. 353, 357, 205 A.2d 413, 416 (1964) (affirming treble damages where
 the plaintiff's exclusive ownership of timber was not contested on appeal);
 Amey v. Hall, 123 Vt. 62, 69, 181 A.2d 69, 74 (1962) (affirming treble
 damages for trees cut beyond the defendant's proposed property line). 
 Since defendant had an undivided ownership interest in the trees at the
 time of the logging, the treble damages statute simply does not apply.

 ¶ 10. The punitive aspect of the timber trespass statute serves to
 deter intentional trespass and the wrongful taking of another's timber. 
 Singer, 2006 VT 46, ¶ 11. It is inapplicable in this case as defendant is
 not a trespasser. See Masters v. Stone, 134 Vt. 529, 532, 367 A.2d 686,
 688 (1976) (holding that 13 V.S.A. § 3606 only applies to trespassers). He
 owns the land and trees in question as a tenant-in-common. A
 tenant-in-common cannot bring an action for trespass against another
 tenant-in-common for cutting and selling trees which grew on the common
 property. We decided this principle in Booth v. Adams, 11 Vt. 156, 160
 (1839), where we held that "one tenant in common of land cannot maintain
 trespass against his co-tenant, unless he is expelled from the common
 estate or deprived of the common enjoyment," and that "any act of the
 co-tenant, which might be referred to as his right, as gathering in crops,
 cutting trees fit to cut, or removing fences . . . is not the ground of
 such action, even on the part of him who sowed the crop or erected the
 fence." Likewise in Wait v. Richardson, 33 Vt. 190, 194 (1860), we held,
 "[t]he mere entry upon the common land by one of the tenants, and cutting
 and carrying off the timber therefrom, is no where treated as giving to the
 other tenant the right to maintain an action of trespass of any kind."

 ¶ 11. Plaintiff relies on Guild v. Prentis, 83 Vt. 212, 74 A. 1115
 (1910), for the proposition that the timber trespass statute is applicable
 even where there is no trespass. Plaintiff, however, misreads Guild. That
 case was brought by lessors under the timber trespass statute against the
 defendants who cut trees that afforded shade for lessors' summer cottage. 
 Id. at 213, 74 A. at 1116. Thi Court held that the owners of the land, who
 had conveyed the fee of the same land to another reserving to themselves
 the right to cut and remove the trees on the land, could give no leave to
 cut the trees during the ten-year tenancy and that the timber trespass
 statute applied so as to award treble damages to the injured lessors. Id.
 at 214, 218, 74 A. at 1116, 1118. Whereas the plaintiffs in Guild v.
 Prentis, as lessees, did have the right to exclude owners in fee during the
 term of the lease, here, plaintiff can demonstrate no similar right.

 ¶ 12. This conclusion comports with the goal of the statute to deter
 intentional trespass and the wrongful taking of another's timber. Singer,
 2006 VT 46, ¶ 11. Defendant, as co-owner of the trees, is not among the
 intended targets of the statute, those " 'tree pirates' " and " 'arboreal
 rustlers' " who trespass on another's property and remove timber to which
 they have no right. Id. (quoting King v. Grecco, 111 S.W.3d 877, 881 & n.2
 (Ky. Ct. App. 2003)). Nor would treble damages deter one who "has good
 reason to believe that the trees . . . belonged to him." 13 V.S.A. § 3606. 
 Considering the plain language and purpose of this statute, we find no
 error in the trial court's denial of treble damages under 13 V.S.A. § 3606. 
 Therefore, plaintiff was not entitled to attorney's fees under 13 V.S.A. §
 3701.

 II.

 ¶ 13. Plaintiff next asserts that the trial court erred when it held
 that the "timber cruising" or "sampling" method of determining the quality
 and quantity, and therefore the value, of the timber was too speculative. 
 "We review the court's findings of fact for clear error." Guibord v.
 Scholtz, 2006 VT 22, ¶ 4, 179 Vt. 623, 895 A.2d 202 (mem.); V.R.C.P.
 52(a)(2). "A finding will not be disturbed merely because it is
 contradicted by substantial evidence; rather, an appellant must show there
 is no credible evidence to support the finding." Highgate Assocs. v.
 Merryfield, 157 Vt. 313, 315, 597 A.2d 1280, 1281 (1991). "Findings of fact
 will be set aside only when they are clearly erroneous, with due regard
 given to the opportunity of the trial court to judge the credibility of the
 witnesses and the weight of the evidence." P.F. Jurgs & Co. v. O'Brien,
 160 Vt. 294, 300, 629 A.2d 325, 329 (1993).

 ¶ 14. At trial, three experts presented evidence on the value of the
 timber cut and sold. The trial court heard testimony from plaintiff's
 experts Thomas Hahn, Stanley Robinson and Alan Bouthelier that would have
 supported a finding that the fair market value of the timber removed from
 the property was approximately $80,000. Hahn's testimony supporting this
 figure was based on his use of the "timber cruising" or "sampling" method. 
 The trial court also heard similar value estimates from Robinson based on a
 review of the mill slip and trip ticket summary and from Bouthelier based
 on his visit to the property prior to the logging. Hahn, however, also
 provided testimony that the fair market value of the timber cut and sold
 was $61,785.79. He based this figure on the prevailing published market
 price of a quantity of wood in the summer of 2002 and on the quality and
 quantity figures of the timber that was reported sold in the summary of
 mill slips and trip tickets. The trial court, after evaluating the
 different methods, relied on this testimony to determine the fair market
 value of the timber cut and sold. Since the trial court based its finding
 on adequate evidence, its decision not to use the alternative calculations
 was proper.

 ¶ 15. Plaintiff is due an accounting for his share of the fair
 market value of the timber cut and sold. The trial court properly found
 that he is due one half of $61,785.79, and that the timber trespass statute
 does not apply in this case. Accordingly, we affirm.

 Affirmed. 


 FOR THE COURT:



 _______________________________________
 Associate Justice


------------------------------------------------------------------------------
 Footnotes

FN1. Plaintiff does not appeal the trial court's finding as to the fair
 market value of a unit of wood in the summer of 2002.