Isleib v. Zutell, No. 635-8-10 Rdcv (Teachout, J., Mar. 2, 2012)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Rutland Unit** | **Docket No. 635-8-10 Rdcv** |

**CYNTHIA ISLEIB and**
**CAROL AINES (RAWSON),**
    **Plaintiffs**

v.

**JAMES ZUTELL and**
**JANET ZUTELL,**
    **Defendants**

## DECISION
### Findings of Fact and Conclusions of Law

This matter came before the court for final hearing on January 5, 2012. Plaintiffs were present and represented by Attorney Karl C. Anderson. Defendants were present and represented by Attorney John S. Liccardi. Post-hearing memos were filed on January 20 and February 6, 2012. Plaintiffs seek recovery based on the cutting down of two large trees on their property.

Based on the credible evidence, the Court makes the following Findings of Fact and Conclusions of Law.

### Findings of Fact

Plaintiffs Cynthia Isleib and Carol Aines own a residence on the corner of Route 30 and Huff Pond Road in Sudbury, opposite a picturesque green with large maple trees and a church. They have lived there for 22 years. The property is slightly over two acres and is roughly a rectangle shape, with the house and driveway fronting on Huff Pond Road, which is at the north end and is the short side of the rectangle, and the balance of the property toward the back being undeveloped woods with some cedar, maple, pine, and birch trees. There is a rise in elevation toward the back with good views of the Champlain Valley and the Adirondack Mountains.

Since purchasing the property, Plaintiffs have slowly been working their way toward the back of their lot, clearing and mowing and planting and landscaping the land. At the high spot, which they hadn't reached yet, there were two large, old maple trees. They had a plan that when they reached that spot they would custom build a gazebo, making use of the two handsome maple trees as features for the site and to provide shade without obstructing the views. They would also retain nearby birch trees for their aesthetic value.

Their southeast corner was marked by an iron pipe that protruded 18" out of the ground. The distance from Huff Pond Road to the iron pipe matches the distance in the Plaintiffs' deed. The location of the two large maples on the rise was well to the north of the iron pipe, well within the Plaintiffs' land. On the property easterly and adjacent to the Plaintiffs' land, running roughly parallel to and near the easterly boundary of Plaintiffs' land (although not exactly bordering it) was a woods road that ran toward lands belonging to others to the south of Plaintiffs' land, including land owned by Defendant Janet Zutell's mother, who had previously owned Plaintiffs' land. Janet Zutell and her husband James lived two properties to the east of Plaintiffs. They had permission from Janet Zutell's mother to use her property for their own purposes. James Zutell used the woods road to access a long-standing debris pile on his mother-in-law's property where he accumulated scrap metal until he had enough to otherwise dispose of a full load.

Plaintiffs also used the woods road to walk their dogs occasionally. In March of 2009, Plaintiffs were walking on the woods road and discovered an open area at the back of their woods and bulldozer tracks running from the woods road into their property. They found that a bulldozer had cleared a swath of their property from the woods road approximately 150 feet west through the back of their property. The swath was between 15 and 35 feet wide. On further exploration, they discovered that the two maple trees that were on the high spot where they had planned their gazebo had been cut down. Two stumps remained. The stem of one of the trees had been hauled back to the woods road and lay along side it. Sections of the trees had been removed.

They talked to James Zutell, who did not deny that he had been responsible for the cutting of the trees, which had been done by a person working with him and under his direction. He treated it as "not that big a deal," and expressed surprise that they would be so upset about it. Plaintiffs brought this suit to recover damages for the loss of the trees, which were important to their use and enjoyment of their property and their ongoing plans for it. They believe that the Zutells have used portions of the wood for firewood, as they heat their home with wood. Mr. Zutell denies having done so. There is no evidence of any portions of either tree having been cut into firewood and burned by the Zutells, although portions of the trees are missing.

At trial, Mr. Zutell testified that he believed that the trees were located on his mother-in-law's land, and that he knew that Plaintiffs owned about two acres and "felt" that the trees were located south of where their land must be. He said that he "went with what I felt was far enough." He testified that he cut them down because they would be a hazard to anyone walking in the woods, as they were decaying.

The Court finds this testimony not credible. He never attempted to contact the Plaintiffs with a concern about hazardous trees on or near their land, or to determine whether any trees he proposed to cut were located on Plaintiffs' land or on his mother-in-law's land. He did not explain, when first confronted by the Plaintiffs, that he had cut them down to minimize hazards to people walking in the woods. The iron pipe at the southeast corner of the Plaintiffs' land might have been covered with snow when he cut the trees, but it had been there for at least 20 years, and he had lived in the vicinity and used his mother-in-law's land for many years. The method he says he used to estimate that he was cutting on his mother-in-law's land is not a responsible way to avoid trespassing on someone else's land and cutting their trees. Furthermore, while one of the trees had some decay, it was 65% good, and the other had no decay at all. A tree nearby

2

that was more of a hazard but did not have as good wood was not cut down. The Court finds that he cut the trees because he wanted to do so and disregarded the ownership of the land on which they stood. He did not make a legitimate or understandable mistake about the Plaintiffs' boundary; he simply ignored it, and gave an explanation after the fact in which he attempted to characterize his actions as a mistake.

The evidence suggests that he cut the trees to use the wood for firewood. However there is no concrete evidence that this actually occurred, and Mr. Zutell denies it. The use by both Zutells of wood from the cut trees for firewood in heating their home is not proved by a preponderance of the evidence.

Two experts were asked to view the stumps and other remains of the trees on the property and describe their condition and value. The Court finds the testimony of arborist Michael Fallis credible with respect to the condition of the trees. He observed the trees first and testified, and the Court finds, that the smaller of the two trees (Tree #1) had some decay, but that it was 65% good, and that sugar maples decay slowly. Based on his testimony, it is not likely that Tree #1 when standing was a hazard in the woods. His testimony was consistent with the testimony of Plaintiffs, who had observed branches and canopy and a tree healthy enough that they included it in their gazebo plan. With respect to Tree #2, the Court finds the testimony of Mr. Fallis credible that it was a healthy tree with no decay. Its stem had been hauled to the side of the woods road. It is not likely that it was a hazard as a standing tree. The Plaintiffs' testimony that it was a large healthy-looking tree is consistent with Mr. Fallis's testimony.

Ward Mann, Defendants' expert, is a forester for a lumber company and previously worked as a log buyer. He visited the property after Mr. Fallis had been there. He testified that Tree #1 was decayed, and that when the stem hit the ground the pieces had just broken apart and scattered. He testified that Tree #2 was "sounder" at the stump but that it was hollow higher up, and that although there were some live limbs lying on the ground, it had not had a full crown and canopy. For the reasons previously stated, and taking into account the photographic evidence admitted at trial, the Court finds the testimony of Mr. Fallis more credible with respect to the condition of the trees.

Each expert relied on his own determination of the condition of the trees in determining the value, and they also disagreed with respect to the appropriate method of valuation. Mr. Fallis used the trunk formula method, which is an accepted method of valuing trees of the Council of Tree and Landscape Appraisers. He found that the trees were too large to be replaced, so that the replacement method of valuing trees could not be used. The trunk value method uses a formula that takes a variety of factors into account, including species, condition, size, location, and unit tree cost. Using this method, he valued Tree #1 at $24,400 and Tree #2 at $51,500, for a total loss of $75,900.

Mr. Mann valued the trees for commercial purposes, and found, based on his opinion of their condition, that Tree #1 had no value for either pulpwood or firewood and that it consisted of oversize rotten wood. As to Tree #2, he said there was some value at $5-10 per cord as firewood, but that otherwise it was "worm dirt," unusable for biomass or pulp fiber. He testified

3

that it had no value in the forest, including any possible aesthetic value, and that it constituted a liability rather than an asset.

Mr. Mann's testimony about the condition of the trees, which the Court has found to be not reliable, formed the basis for his opinions of value. Furthermore he valued the trees based on his experience valuing trees for logging purposes, and there is no evidence that the best use of the trees was for logging purposes or that that was their intended use. They were located on a two acre residential lot that was in the process of being gradually landscaped. The trees are similar to the large stately trees on the green opposite the Plaintiff's residence. Their use was as handsome trees that added aesthetic value to the enjoyment of the wooded portion of the Plaintiffs' property.

Mr. Fallis, in valuing the trees by the trunk value method, valued the trees in relation to their use as part of the gazebo plan, and he used percentages for contribution (90% and 100%) accordingly in his calculation under the trunk value method. Although Plaintiffs both testified that it was their plan to build a gazebo with a design that incorporated the trees into their landscape plan, they had taken no steps to do so yet. The trees stood in an unimproved part of their property, and the gazebo project was a plan for the future that was not yet begun. Thus, the Court finds that Mr. Fallis used a contributory value that was too high, as it related to an unrealized plan rather than something in existence. There is still contribution value to the location, however, as the trees were located on an elevated spot with good views, thus contributing aesthetic value to a special location even without a gazebo.

The Court finds that the contribution value should be reduced to reflect the fact that the trees as standing, as mature stately sugar maples on a high spot in an unimproved wood, had some contribution value to the property but not as much as if the gazebo plan had been realized. When contribution percentages are reduced to one-third of the percentages assigned by Mr. Fallis, to 30% for Tree 1 and 33% for Tree #2, using the formula method as shown on Plaintiffs' Exhibits 11 and 12 the value of Tree #1 is $17,600 and the value of Tree #2 is $36,100, for a total loss in value for the two trees of $53,700.

## Conclusions of Law

***Proof of Boundary.*** Defendants argue that Plaintiffs failed to introduce the testimony of an expert surveyor to show the location of the boundaries, and further argue that as a result, Plaintiffs have not proved that the trees were on their property. The Court concludes that expert testimony was not necessary in this case. Defendants do not claim a boundary dispute. The Plaintiffs' southeast corner was marked by an iron pipe at the location identified in their deed. The deed was originally given to Plaintiffs' predecessor in title by Mr. Zutell's mother-in-law. There is no actual dispute about the location of the southern boundary that would call for expert testimony. Plaintiffs adequately proved the location of their easterly and southern boundaries, and proved that the trees for which they seek damages were located on their property.

***Proof of Tree Cutting on Plaintiffs' Land.***  Plaintiffs have proved that Defendant James Zutell cut the two trees at issue, located on Plaintiffs' property, without permission or any valid right or basis to do so.   Plaintiffs are entitled to treble damages under 13 V.S.A. § 3606,  or $53,700 x 3 =  $161,700, unless "it appears on trial that the defendant acted through mistake," in which case Plaintiffs would only be entitled to single damages.

***Defendants' Claim of Mistake.***  The Court interprets "mistake" in the statute to mean a legitimate basis for a misunderstanding.  As shown by the evidence set forth above, Mr. Zutell had no grounds for a mistake in his determination of the location of the Plaintiffs' southern boundary.  An accurate boundary marker had been in existence for 20 years.  The trees were located north of that marker.  He did not make any reasonable effort to determine ownership of the land where the trees stood before cutting the trees.  He has not proved mistake within the meaning of the statute.  Therefore, Plaintiffs are entitled to treble damages.

***Measure of Damages.***  Defendants argue that the proper measure of damages is the reduction in the market value of the Plaintiffs' property as a result of the tree cutting.  The cases indicate that there are alternative methods of proving damages, as shown by the cases cited by both attorneys in their memoranda.  While reduction in market value is one permissible method for measuring damages, and market value of the wood is another permissible method in other cases, there is no case law denying Plaintiffs the opportunity to show loss of the contributory value of the trees in a situation where the trees were large, old, stately trees that added aesthetic value to the use and enjoyment of a two-acre, wooded, rural residential lot.  The Vermont Supreme Court has affirmed a jury award for trees that have aesthetic value but no direct commercial value, and where the trees are valued independently of reduction in the market value of the property on which they stand. *State v. Singer,* 2006 VT 46; *Shahi v. Maddon,* 2008 VT 25.  The trunk value method is recognized by professional appraisers as a suitable method for valuing trees that contribute aesthetic value to the property on which they stand, and it is the appropriate measure of value in this case.  The valuation of the wood for commercial purposes is not the proper measure of value, as neither the highest and best use of the trees nor the actual use of the trees was for commercial wood production, either lumber or firewood.  The application of the trunk value method by arborist Farris overstated the value because the trees were valued as if the gazebo were already constructed and the gazebo design plan already in place on the ground, but the trunk value method represents an appropriate means of valuation as long as an appropriate percentage us used for contribution value.

***Motion to Dismiss.***  Plaintiffs have not proved that Janet Zutell had any role in the cutting of the trees or that she used any of the wood for household fuel.  The claim against Janet Zutell is dismissed with prejudice.

***Attorneys' Fees.***  Defendants argue that Plaintiffs should not be entitled to recover fees because they made no claim for them in the Second Amended Complaint.  While it is true that the Second Amended Complaint does not set forth a claim for attorneys' fees, a fair reading of it shows that its effect was to add a count of negligence as an additional count to those already in the First Amended Complaint, without restating the entire First Amended Complaint.  The First Amended Complaint, filed May 10, 2011, stated a claim for attorneys' fees that was not withdrawn when the additional negligence count was added in the Second Amended Complaint.

Defendants had notice that Plaintiffs claimed attorneys' fees pursuant to 13 V.S.A. § 3701(f). As Plaintiffs have proved their claim, they are entitled to attorneys' fees. The Vermont Supreme Court has indicated that once a plaintiff is found to be entitled to treble damages under 13 V.S.A. § 3606, the plaintiff is also entitled to attorney's fees under 13 V.S.A. §3701(f). *Stanley v. Stanley,* 2007 VT 44. Thus, they are recoverable by the Plaintiffs in this case. As they can not be determined until the conclusion of the litigation, the Court will set a procedure for determination of the amount.

**Order**

Plaintiff's counsel shall submit time and billing records for attorneys' fees, as well as a bill of costs. Defendant's counsel shall have 15 days to file any objections. Upon determination of attorneys' fees by the Court, Plaintiffs' counsel shall prepare a proposed judgment, and Defendants' counsel shall have five days to object.

Dated at Rutland, Vermont this 1st day of March, 2012.

_____
Hon. Mary Miles Teachout
Superior Judge

6